497 A.2d 1336

**Robert DILLON, a minor by his P/NG, Diane DILLON and adoptive parent and guardian, Thomas Dillon and Diane and Thomas Dillon in their own right, Appellants**

**v.**

**The NATIONAL RAILROAD CORPORATION (AMTRAK) and Consolidated Rail Corporation (Conrail) and Southeastern Pennsylvania Transit (SEPTA) and City of Philadelphia and Andrew L. Lewis, Jr. and Joseph L. Castle, Trustees of the Reading Company and Robert W. Blanchette, R.C. Bond and J.H. McArthur, Trustees of Penn Central Transportation Company and Fairmount Park Commission and Louis Thornton Klauder, t/a Louis T. Klauder & Associates.**

Superior Court of Pennsylvania.

Argued Nov. 23, 1983.

Filed Aug. 23, 1985.

128

■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■
■■■■■
■■■■■■■■■■■■■■■■■■■
■■■■
■■■■■■■■■■■■■■■■■■■

Robert J. Murphy, Philadelphia, for appellants.

Charles T. Roessing, Philadelphia, for appellees.

Before MONTEMURO, WATKINS and HOFFMAN, JJ.

MONTEMURO, Judge:

This matter is before us on the appeals of plaintiffs below from the lower court's orders of March 2, 1982, and April 8, 1982.[1] The order of March 2, 1982, both denied appellants' motion for an extension of time in which to respond to a motion for summary judgment by appellees, the trustees of the Reading Company, and granted the motion for summary judgment as unopposed by appellants. The order of April 8, 1982, denied appellants' motion for reconsideration of the March 2, 1982, order.

1. Although technically there are three appeals before us rather than two, the third appeal results merely from an amended notice of appeal, and is substantively identical to the first appeal from the lower court's order of March 2, 1982.

We initially note that, while it is procedurally permissible for a party to appeal a lower court's order and at the same time request the lower court itself to reconsider such order, Pa.R.A.P. 1701, a subsequent *denial* of reconsideration by the lower court is not an appealable order. *Geek v. Smeck,* 275 Pa.Super. 259, 418 A.2d 711 (1980); *Provident National Bank v. Rooklin,* 250 Pa.Super. 194, 378 A.2d 893 (1977). Rule 1701 contemplates that when a motion for reconsideration is *denied,* the prior appeal retains its validity; however, when reconsideration is *granted,* the prior appeal becomes inoperative and appeal time will run anew after the lower court reconsiders the merits of the claim and enters a new order. Thus, it is clear that the lower court's April 8, 1982 order refusing reconsideration is not reviewable on appeal, and the appeal from that order is dismissed. Since appellants fortuitously filed a direct appeal from the prior order of March 2, 1982, that appeal retains its validity and is properly before us.

Two issues are presented in the appeal from the lower court's order of March 2, 1982: whether the lower court erred in denying appellants' motion for an extension of time in which to respond to appellees' summary judgment motion, and whether the lower court erred in granting the motion for summary judgment.

The underlying facts are as follows: On August 14, 1976, appellant, Robert Dillon, then aged thirteen, climbed a fifty (50') foot signal bridge on the Fox Chase branch of the commuter rail system in Philadelphia. The signal bridge had been modified for the electrification of the trains, and appellant, Robert Dillon, came in contact with one of the electrical lines. He received an electrical shock, fell from the signal bridge, and consequently suffered injuries including the amputation of his right leg above the knee.

The appellants, Robert Dillon, and his parents, filed suit on December 7, 1977, against: appellees, several other railroad entities, the City of Philadelphia and the Fairmount Park Commission. Liability against appellees was predicated on Reading Company's ownership, possession, control,

operation, and maintenance of the signal bridge and the land upon which the signal bridge was located. Appellees joined as an additional defendant, Louis T. Klauder and Associates, the engineering firm which had designed, constructed, and installed the electrical modifications to the signal bridge.

Extensive discovery ensued, as is evidenced by thirteen pages of docket entries. On December 18, 1981, appellees filed the instant motion for summary judgment. The basis for the summary judgment motion was that, pursuant to the federal Regional Rail Reorganization Act[2] (hereinafter "Act"), all right, title and interest in Reading Company's rail properties were conveyed to Conrail on April 1, 1976. This conveyance took place over four months *prior* to the accident of appellant, Robert Dillon. Appellees argued that since all theories of liability advanced against them were premised on Reading Company's ownership or possession of the property, and since Reading company neither owned nor possessed the property as of the date of the accident, they were entitled to summary judgment in their favor.

Appellants contend that they duly prepared a response to appellees' summary judgment motion, in accordance with local rule.[3] Inexplicably, appellants' response was never received by the lower court. A pre-trial conference was held on January 27, 1982, at which time appellants learned that appellees' summary judgment motion remained unopposed. No further action was taken by appellants until eight days later, on February 4, 1982, when appellants filed

2. Act of January 2, 1974, Pub.L. 93–236 Title I, § 101 *et seq.,* 45 U.S.C. § 701 *et seq.*

3. Philadelphia Co. R.C.P. 140 provides in pertinent part:
     *(C) Response Requirements.*
     Any party opposing the relief requested must file with the Motion Clerk, not later than 5 P.M. on the date contained in the letter of transmittal required by Section (B) hereof [a date not later than twenty (20) days of filing date of the motion], the appropriate response....
     The Motion Clerk may, upon written request, extend the time limit to respond for a period not to exceed ten (10) days. If there is no response within the time provided, the matter shall be treated as uncontested.

both a motion to extend the time in which to respond to appellees' summary judgment motion, and an answer and opposing affidavit to appellees' motion for summary judgment.[4] On March 2, 1982, the lower court entered its order denying the motion to extend, and granting summary judgment in favor of appellees.

The first issue presented in this appeal is whether the lower court erred in denying the motion to extend, thereby deciding the summary judgment motion without consideration of appellants' tardy answer and opposing affidavit thereto. Specifically, appellants argue that under Pa.R.C.P. 1035(b), they had until the day the order was entered in which to file their answer and opposing affidavit;[5] thus, Philadelphia Co. R.C.P. 140 relied on by the lower court is invalid in that it is inconsistent with the Pennsylvania Rules of Civil Procedure.

█ Counties possess authority to make rules for the operation of their own court systems. 42 Pa.C.S. § 323; *Byard F. Brogan, Inc. v. Holmes Electric Protective Co.,* 501 Pa. 234, 460 A.2d 1093 (1983). Local rules, however, must be consistent with and not in conflict with the Pennsylvania Rules of Civil Procedure. *Ricci v. Ricci,* 318 Pa.Super. 445, 465 A.2d 38 (1983); *appeal denied,* 319

---

4. Curiously, both the motion to extend and the answer to the summary judgment motion were premised on documents, the existence of which appellants did not discover until February 1, 1982.

5. In the instant case, appellants filed an answer, with an opposing affidavit attached thereto, and a memorandum of law in response to appellees' motion for summary judgment. In its opinion written pursuant to Pa.R.A.P. 1925, the lower court alternatively refers to appellants' "answer" or "response" as having been filed late. We note that if the "appropriate response" required by Philadelphia Co. R.C.P. 140 is considered something more than the "opposing affidavit" required by Pa.R.C.P. 1035(b), the local rule may be deemed invalid as being inconsistent with the requirements of Pa.R.C.P. 1035(b). *See* 2 GOODRICH AMRAM § 1035(b):1. However, that issue is not before us as the lower court rejected the entire "response" or "answer" filed by appellant, which necessarily included the opposing affidavit. In any event, appellants' claim of invalidity goes to the timing requirements of the local rule, and does not address the actual document to be filed. See discussion *infra.*

Pa.Super. 227, 465 A.2d 1313 (1983) [6], *Miller v. Hild,* 303 Pa.Super. 332, 449 A.2d 714 (1982). A local rule will be held invalid if it abridges, enlarges, or modifies substantive rights of the litigants. *Miller, id.*

As noted in footnote three, *supra,* Philadelphia Co. R.C.P. 140 requires that a party opposing a motion file an appropriate response within twenty days; if there is no such response filed within the time provided, the matter is treated as uncontested. Here, the summary judgment motion was filed on December 18, 1981. Under the local rule, therefore, appellants had until January 7, 1982, in which to file their appropriate response.

Pennsylvania Rules of Civil Procedure 1035(b) provides that where a motion for summary judgment is filed, "[t]he adverse party, *prior to the day of hearing,* may serve opposing affidavits." (Emphasis added). Appellants reason that where, as here, the summary judgment motion is decided without hearing, Pa.R.C.P. 1035(b) should be interpreted to allow the adverse party, to file its opposing affidavits up until *the day of disposition.* Appellants conclude that the local rule is inconsistent with such an interpretation, and is, therefore, invalid.

We refuse to accept appellants' interpretation of Pa.R.C.P. 1035(b), and, consequently find no conflict with the local rule. While Pa.R.C.P. 1035(b) does not address the situation where there is no hearing on the summary judgment motion, it would be impractical to allow an opposing affidavit to be filed at any time until the entry of the order. In our view, the benefit which accrues to both the opposing party and the lower court would be vitiated if the time for filing was permitted to remain indefinite. Pa.R.C.P. 1035(b) sets forth a definite filing deadline for cases where a hearing is held—it does not follow that where *no* hearing is held, the time for filing is *indefinite.* Instead, it is reason-

**6.** The court quashed this second appeal "[s]ince the subject of the within appeal was also the subject of an appeal as of No. 1852 Philadelphia, 1981, and since that proceeding has been concluded by the entry of an Opinion, the within appeal is quashed as moot."

able to adopt a definite time period in instances where no hearing is held. Thus, the Philadelphia county rule requiring opposing affidavits to be filed within twenty (20) days of the summary judgment motion, is, under the circumstances, compatible with, rather than contradictory to, Pa.R.C.P. 1035(b).[7]

Appellants present an additional argument with regard to the lower court's denial of their motion to extend. They assert that the lower court abused its discretion in light of their allegation that they had prepared and delivered for filing a timely appropriate response to the summary judgment motion.

"The lower court may extend or refuse to extend the time within which to meet a filing requirement so long as the action taken does not amount to an abuse of discretion which causes manifest and palpable injury to one of the parties." *Byard F. Brogan, supra,* 501 Pa. at 241, 460 A.2d at 1096. We find no abuse of discretion here. The motion to extend was not filed until twenty-eight (28) days following the expiration of the time for filing an appropriate response to the summary judgment motion. Appellants did not adequately explain their failure to file their answer and opposing affidavit in a timely fashion, and even after they were informed of the unopposed status of the summary judgment motion, they delayed another eight (8) days before filing the motion to extend and answer, and opposing affidavit. Furthermore, the thrust of both the motion to extend and the opposing affidavit concerned documents which were discovered by appellants only four (4) days prior to the filing of the motion to extend and opposing affidavit.

Moreover, we perceive no injury to appellants by the lower court's refusal to extend the time for filing and accept the submitted opposing affidavit. Although the motion for summary judgment was treated as uncontested,

---

7. We observe, however, that a contradiction would exist in a situation where a motion court adhered to the twenty (20) day limitation, even when a hearing on the summary judgment motion was scheduled for a later date. However, we are not confronted with such a situation.

summary judgment was not automatically entered in favor of appellees. The lower court properly reviewed the record before it to determine whether there was a genuine issue of material fact and whether appellees were entitled to judgment as a matter of law. The answer submitted by appellants did not dispute the operation of the federal Act which transferred the right, title and interest of all of Reading Company's rail properties to Conrail. Instead, the answer maintained that judgment should not be entered in favor of appellees because newly-discovered documents revealed that: (1) Reading Company had designed, constructed and installed the electrical modification to the signal bridge; and (2) at the time of the accident, Reading Company leased the rail facilities concerned from the City of Philadelphia. These documents were incorporated into the answer by the opposing affidavit. In effect, therefore, appellants attempted to show that there remained disputed issues of fact regarding whether or not Reading Company was liable for negligent design, construction, and installation; or, as a possessor of land.

Even if the lower court had considered such documents, however, they would have had no effect on the grant of summary judgment in favor of appellees. Assuming that factual issues were apparent with regard to appellees' negligent design, construction, and installation, this cause of action had not previously been pled against appellees, but was a totally new theory of liability.[8] Until the filing of appellants' motion to extend and opposing affidavit, appellees' liability had been predicated solely on Reading Company's status as the owner or possessor of the railroad properties. In actuality, appellants were relying on a new cause of action against appellees without first obtain-

8. Early on in this litigation, appellees themselves joined Louis T. Klauder and Associates on this basis of liability. No other party filed any claims against Louis T. Klauder and Associates, and so the entry of summary judgment in favor of appellees also relieved Louis T. Klauder and Associates of liability.

ing leave of court to amend their complaint.[9] Thus, factual issues pertinent to liability under this unauthorized theory were irrelevant to the lower court's summary judgment determination.

Similarly, the document purporting to expose the Reading Company as leasee of the rail properties at the time of the accident would not have influenced the entry of summary judgment. Reading Company's position as owner or possessor of the rail properties at the time of the accident was exactly the question before the lower court; i.e., what effect the federal Act had on all of Reading Company's rights, titles, and interests in its rail properties. The lease agreement, being an interest by Reading Company in rail property, would be subject to the operation of the federal Act.

Accordingly, we find that the lower court's refusal to extend the time in which appellants had to file their opposing affidavit did not constitute an abuse of discretion causing manifest and palpable injury to appellants.

The second issue raised on appeal is whether the lower court erred in granting summary judgment in favor of appellees. Appellants present two arguments to attack the summary judgment: that the motion for summary judgment was not timely filed "so as not to delay trial", Pa.R. C.P. 1035(a); and that summary judgment was granted on the basis of deposition testimony of the moving party, in violation of the rule established in *Nanty-Glo v. American Surety Co.*, 309 Pa. 236, 163 A. 523 (1932). We find no merit to either contention.

■ Pennsylvania R.C.P. 1035(a) permits a party to move for summary judgment "[a]fter the pleadings are closed, but within such time as not to delay trial...." The motion for summary judgment was filed December 18, 1981. At that time, the case was specially listed for trial on January

9. Further, it is probable that the statute of limitations on such a cause of action had already passed. The electrical modification was done in the "early 1960's," and a twelve year statute of limitations applied. 42 Pa.C.S. § 5536.

4, 1982.[10] The lower court considered the motion for summary judgment on the merits. Since the function of a summary judgment motion is to avoid a useless trial, *Rose v. Food Fair Store, Inc.*, 437 Pa. 117, 262 A.2d 851 (1970); *William J. Heck Builders, Inc. v. Martin*, 315 Pa.Super. 395, 462 A.2d 253 (1983), and such a result was achieved here, we find no error in the lower court. In addition, our research has uncovered only one instance of reversal of the entry of summary judgment due to untimeliness—where summary judgment is requested *after* the commencement of trial. *William J. Heck Builders, Inc., supra.* This is not the situation before us.

Appellants' final argument involves the rule set forth in *Nanty-Glo, supra.* As extended to summary judgment motions, the rule provides that "testimonial affidavits of the moving party or his witnesses, not documentary, even if uncontradicted, will not afford sufficient basis for the entry of summary judgment, since the credibility of the testimony is still a matter for the jury." 2 GOODRICH-AMRAM 2d § 1035(b):4. Appellants assert that the summary judgment motion was supported only by oral testimony, the credibility of which was a matter for determination by the jury.

Appellants' position is erroneous. Appellees' motion for summary judgment was based upon the applications of federal law—oral testimony in the form of depositions by Reading Company employees was merely corroborative of the operation of the federal Act. Since it is undisputed that appellant, Robert Dillon's, accident occurred on August 14, 1976, and Reading Company was one of the rail entities subject to the federal Act, it was a purely legal interpretation of the federal Act that all rail properties of Reading Company were conveyed to Conrail on April 1, 1976. Therefore, *Nanty-Glo, id.*, had no applicability to the instant case and does not bar the entry of summary judgment.

10. Appellees state that the listing of January 4, 1982, was only on a "back-up" basis.

Accordingly, the lower court's order of March 2, 1982, is affirmed. The appeal from the lower court's order of April 8, 1982, is dismissed.