568 A.2d 1339

**William P. JACK**, Petitioner,

v.

**COMMONWEALTH of** Pennsylvania, DEPARTMENT OF **PUBLIC WELFARE**, Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 3, 1989.

Decided Jan. 12, 1990.

550

David L. Hunter, Jr., Eckert, Burke & Hunter, Erie, for petitioner.

Bruce G. Baron, Asst. Counsel, Harrisburg, for respondent.

Before CRUMLISH, Jr., President Judge, COLINS, J., and BARBIERI, Senior Judge.

COLINS, Judge.

William P. Jack, R. Ph., a licensed pharmacist, (petitioner) petitions for review of an order of the Office of Hearings and Appeals (OHA) of the Department of Public Welfare (DPW) which denied petitioner's appeal. We affirm.

Jack's Pharmacy, Inc. (Jack's Pharmacy), was a provider of pharmacy services participating in the Medical Assistance Program administered by DPW. Jack's Pharmacy was owned and managed by petitioner. On December 1, 1983, petitioner was convicted of a crime related to the practice of his profession under 21 U.S.C. § 841(a)(1). The record reflects that prior to being convicted petitioner transferred his ownership interest in his shares of stock of Jack's Pharmacy to Mary Jo Jack, his wife, who is also a licensed pharmacist. Petitioner resigned as an officer and director of Jack's Pharmacy prior to having been convicted. Anthony Petruso was elected as President of Jack's Pharmacy

and Mary Jo Jack was elected Secretary/Treasurer, as well as director of Jack's Pharmacy.

DPW notified petitioner by letter dated August 8, 1985, that he was terminated from participation in the Medical Assistance Program due to his conviction and the suspension of his license to practice pharmacy. DPW also notified Jack's Pharmacy, by letter dated the same day, that it was terminated from participation in the Medical Assistance Program due to the conviction of petitioner. This termination was to become effective as of the date of the conviction, December 1, 1983. DPW notified Jack's Pharmacy that restitution in the amount of $32,082.20, was claimed for payments made by DPW to Jack's Pharmacy from December 1, 1983 through May 13, 1985.

Petitioner did not appeal his notice of termination. However, an appeal was filed on behalf of Jack's Pharmacy which was docketed with DPW at File No. 12–85–039.[1] The parties agreed to proceed on stipulations and no hearing was held on this matter. A successor provider was enrolled during the course of the proceedings. Accordingly, the only issue in dispute before DPW was the termination and restitution claim for the period from December 1, 1983 through May 13, 1985. An attorney examiner issued an adjudication recommending that the appeal on behalf of Jack's Pharmacy be sustained. OHA rejected that recommendation in its order of February 9, 1989, and denied the appeal.[2] The present appeal ensued.

1.  This appeal was labeled by OHA as "Appeal of William P. Jack, R. Ph." which has created some confusion. The decision rendered by OHA is clearly directed to the provider, Jack's Pharmacy, and not petitioner. This Court's docket entries indicate that the appeal is from File No. 12–85–039, but the caption and the petition for review list William P. Jack as the petitioner. Our decision, as did OHA's, disposes of the termination and restitution claims challenged by Jack's Pharmacy. Correct labeling by OHA of the appeal by listing the provider as the appealing party in the future will alleviate the kind of confusion created here.

2.  OHA is the finder of fact in provider cases. *Northwestern Institute of Psychiatry v. Department of Public Welfare,* 99 Pa.Commonwealth Ct. 213, 513 A.2d 495 (1986).

Our scope of review is limited to determining whether OHA's findings of fact are supported by substantial evidence and whether there has been a constitutional violation or error of law. *Centennial Spring Health Care Center v. Department of Public Welfare*, 115 Pa.Commonwealth Ct. 450, 541 A.2d 806, *petition for allowance of appeal denied*, 521 Pa. 607, 555 A.2d 117 (1988).

Petitioner argues that Jack's Pharmacy's right to due process of law under the Fourteenth Amendment to the United States Constitution[3] was violated when OHA ordered it to make restitution from money it claims was legitimately earned and received prior to Jack's Pharmacy being given actual or constructive notice of termination from the Medical Assistance Program, and where the further effect is to unjustly enrich the Commonwealth.

It is first submitted that the regulation upon which OHA relied in denying the appeal, 55 Pa.Code § 1101.77, was not effective at the time that petitioner committed the offenses of which he was convicted. That particular section was adopted on November 18, 1983 and became effective November 19, 1983. It is argued that reliance upon that statutory language is in error because it creates additional punishment greater than the punishment available when the criminal act was committed, and thus, it operates as an ex post facto law.

■ New regulations with respect to sanctions against providers were promulgated by DPW in 1983. Under the new regulations, some sanctions which had previously been discretionary with DPW were made mandatory. Specifically, the adoption of section 1101.77 made the termination of a provider's participation in the Medical Assistance Program for conviction of a criminal act *mandatory*. 55 Pa.Code § 1101.77 reads in pertinent part:

Section 1101.77. Enforcement actions by the Department.

3. U.S. Const. amend. XIV, § 1.

(a) *Departmental determination of violation.* The Department may terminate a provider's enrollment and direct and indirect participation in the Medical Assistance Program and seek restitution as specified in Section 1101.83 (relating to restitution and repayment) if it determines that a provider, an employee of the provider or an agent of the provider has:

. . . . .

(7) Been convicted of a criminal offense under State or Federal laws relating to the practice of the provider's profession as certified by a court.

. . . . .

(b) *Departmental termination of the provider's enrollment and participation.*

. . . . .

(2) If the Department terminates the enrollment and participation of a provider for reasons specified in subsections (a)(3), (5), (6), (7) or (8), the effective date of the termination will be the date of the action specified in the appropriate paragraph of subsection (a).

(3) Termination for criminal conviction or disciplinary action shall be as follows:

(i) the Department *will* terminate a provider's enrollment and participation for 5 years if the provider is convicted of a criminal act listed in Article XIV of the Public Welfare Code (62 P.S. §§ 1401–1411), a medicare/medicaid related crime or a criminal offense under State or Federal law relating to the practice of the provider's profession. If the Department has an additional basis for termination which is unrelated to, and in addition to, the criminal conviction, it may terminate the provider for a period in excess of 5 years. (Emphasis added.)

DPW's interpretation of this regulation is controlling unless it is plainly inconsistent with the language of the regulation or with the statute underlying. *Department of Public Welfare v. Forbes Health System*, 492 Pa. 77, 422

A.2d 480 (1980). DPW has interpreted this regulation as allowing for termination to become effective on the date of conviction and for restitution to be claimed by DPW from the date of conviction. This interpretation is consistent with the language of the regulation.

■ DPW cites the decisions of this Court in *Galena v. Department of State, Bureau of Professional and Occupational Affairs*, 122 Pa.Commonwealth Ct. 315, 551 A.2d 676 (1988) and *Morris v. State Board of Pharmacy*, 113 Pa.Commonwealth Ct. 318, 537 A.2d 93 (1988), in support of its contention that as long as the conviction occurs after the effective date of the statute, the fact that the underlying criminal act occurred before that date is irrelevant. In *Galena*, this Court held that the automatic suspension provision of the Medical Practice Act of 1985[4] was not an improper ex post facto law because it did not create a greater punishment for the crime involved, but only added further qualification for continued licensure. *Galena*, 122 Pa.Commonwealth Ct. at 321–22, 551 A.2d at 679–80. Citing *Morris*, we noted that the conviction was the event triggering suspension and that the commission of the underlying felonies was merely an antecedent act which set the chain of events in motion.

There is no dispute in this matter that petitioner's conviction occurred after the effective date of the regulation, even though the criminal act occurred prior to that time. As in *Galena* and *Morris*, the pivotal point here is the time of conviction not the time when the criminal act was committed. Moreover, DPW submits that the regulation was promulgated for the purpose of controlling the participation of providers that have been convicted of certain crimes. As in *Galena*, we must conclude that the restriction is incidental to the regulation of the licensees, here, providers operating under the Medical Assistance Program. Therefore, the regulation does not operate as an ex post facto law.

4. Section 40(b) of the Act of December 20, 1985, P.L. 457, *as amended,* 63 P.S. § 422.40(b).

■ Although it is true that Jack's Pharmacy did not receive written notice of termination until twenty months after the date of conviction, as a provider, it is charged with the knowledge of DPW regulations with respect to the Medical Assistance Program. *Divine Providence Hospital v. Department of Public Welfare,* 76 Pa.Commonwealth Ct. 188, 463 A.2d 118 (1983). The language of the statute is clear that where a provider, an employee of the provider or an agent of the provider has been convicted of a criminal offense under state or federal law, that DPW *will* terminate a provider's enrollment and participation for five years. It is also clear from the statutory language that the termination will be effective as of the date of the act mandating termination, here, the conviction. 55 Pa.Code § 1107.77(b)(2). Therefore, we can ascertain no due process violation.

■ We now turn to the claim that the effect of allowing restitution would be to unjustly enrich the Commonwealth. There is no question that DPW is entitled to restitution under 55 Pa.Code § 1101.83(a) if it determines that a provider has billed and been paid for a service or item for which payment should not have been made. Section 1101.77 mandates that DPW terminate a provider upon conviction of the provider, an employee or an agent of the provider. Any payments made to Jack's Pharmacy after the date of petitioner's conviction were not properly made and therefore, are entitled to be recouped by DPW. Such recoupment is not unjust, because the provider, charged with knowledge of the regulation, has no reasonable expectation of payment after the date of conviction. *See generally, Chester Extended Care Center v. Department of Public Welfare,* 122 Pa.Commonwealth Ct. 207, 551 A.2d 1138 (1988).

The order of OHA is affirmed.

### ORDER

AND NOW, this 12th day of January, 1990, the order of the Office of Hearings and Appeals of the Department of Public Welfare in the above-captioned matter is affirmed.