579 A.2d 426

**SUBURBAN/BUSTLETON PHARMACY, INC., Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF AGING, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 3, 1990.

Decided July 16, 1990.

72

Eric Kraeutler, with him, Coleen M. Meehan, Morgan, Lewis & Bockius, for petitioner.

David R. Hoffman, Chief Counsel, for respondent.

Before McGINLEY and PELLEGRINI, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

Suburban/Bustleton Pharmacy, Inc. (Suburban) petitions this Court to review the order of the Secretary of the Department of Aging (DOA) which denied Suburban's appeal from DOA's decision to terminate Suburban's participation in the Pharmaceutical Assistance Contract for the Elderly (PACE) program for a period of five years. We affirm.

On May 29, 1987, Jay Pollock (Pollock) and John Dzierza (Dzierza), owners of Suburban, were arrested and charged with approximately eighteen hundred counts of Medicaid fraud and with conspiracy. Both Pollock and Dzierza resigned as corporate officers of Suburban and transferred their shares of stock to their respective spouses on June 5, 1987. As a result, their spouses now own all of Suburban's stock.

Because of the change in ownership of Suburban, the new owners began to apply for participation in governmental assistance programs. First, Suburban applied to DOA for enrollment in the PACE program and was accepted.[1]

Suburban then applied to the Department of Public Welfare (DPW) for enrollment in the Medicaid program. DPW disapproved Suburban's application. On March 2, 1988, Suburban appealed DPW's disapproval of its Medicaid enrollment application.

As part of their plea agreements with the Commonwealth of Pennsylvania in which they agreed to plead guilty to a

1. We note that Suburban, in its initial enrollment application for participation in the PACE program, did not list Dzierza as being employed as one of its licensed pharmacists.

limited number of counts of Medicaid fraud and to conspiracy, Pollock and Dzierza, along with their respective spouses, as the present owners of Suburban, executed a stipulation. The parties stipulated that they waived and released any and all claims to reimbursement from DPW for services rendered to medical assistance recipients after July 15, 1987. Additionally, the parties agreed that Suburban would withdraw and discontinue its appeal of DPW's disapproval of Suburban's enrollment in the Medicaid program with prejudice.

On January 12, 1989, DOA notified the owners of Suburban that it was terminating Suburban's participation in the PACE program for a period of five years. DOA based its determination on the following factors: (1) Dzierza's conviction of Medicaid fraud while employed at Suburban precluded Suburban from participation in the PACE program; (2) Suburban's preclusion from the Medicaid program for cause statutorily precluded Suburban from participation in the PACE program; and (3) Suburban's failure to give DOA notice of the fact that it had been precluded from the Medicaid Program on February 9, 1988 constituted a violation of its PACE Provider Agreement for which Suburban could be terminated from participation in the PACE program. Suburban appealed DOA's decision to terminate its participation in the PACE program, alleging misinformation to the extent that Dzierza was no longer employed at Suburban as of the date of the appeal.

A hearing was held before a Hearing Officer on July 21, 1989, at which time both sides presented evidence. The following issues were stipulated by the parties as the issues for disposition:

(1) Whether Suburban was statutorily precluded from enrollment in the PACE program based on the actions taken by DPW;

(2) Whether Suburban's change of ownership was valid for PACE program purposes; and

(3) Whether the alleged new owners of Suburban breached the PACE regulations and provider agreement by

failing to notify DOA of its preclusion from the Medicaid program.

(N.T., July 21, 1989 Hearing, pp. 5–6).

The hearing officer, in her adjudication, found that although the change in Suburban's ownership was valid for PACE purposes, DOA had the statutory authority to terminate Suburban from participation in the PACE program since it had been precluded from participation in the Medicaid program for cause. Having decided that Suburban was properly precluded from the PACE program, the hearing officer found it unnecessary to determine whether Suburban breached PACE regulations for failing to notify DOA of its preclusion from the Medicaid program. Accordingly, the hearing officer recommended that Suburban's appeal be denied.

On November 17, 1989, the Secretary of DOA entered an Order adopting the Adjudication and Recommendation of the hearing officer in its entirety. Thereafter, Suburban filed a timely request for reconsideration. While Suburban's request was addressed to the proper place, the Secretary of DPW, instead of the Secretary of DOA, received the request and issued an order denying reconsideration. After he was alerted to his mistake, the Secretary of DPW vacated this order stating that he did not have jurisdiction to issue it. The Secretary of DOA then issued an order on January 19, 1990 in which she denied Suburban's request for reconsideration. In her order denying reconsideration, however, the Secretary of DOA reversed her previous determination regarding the change in Suburban's ownership and held that the change of Suburban's ownership was not valid for the purposes of the PACE program. Amidst all of the confusion at the administrative level, Suburban filed this petition for review on December 15, 1989 in order to preserve its right of appeal.[2]

2. Our scope of review of DOA decisions is limited to a determination of whether an error of law has been committed, whether constitutional rights have been violated and whether findings of fact are supported by substantial evidence. *Reynolds v. Department of Aging,* 131 Pa.Commonwealth Ct. 514, 570 A.2d 1373 (1990).

Procedurally, Suburban argues that the order properly before this Court for review is DOA's November 17, 1989 order in which Suburban's change of ownership was declared valid for PACE program purposes. It is Suburban's contention that the Secretary of DOA had no jurisdiction to act on Suburban's reconsideration petition once Suburban filed its petition for review with this Court.

■ Pennsylvania Rule of Appellate Procedure (Pa.R. A.P.) 1701(b)(3) provides in pertinent part that:

(b) *After* an appeal is taken or *review of a quasijudicial order is sought, the* trial court or other *government unit may:*

(3) *Grant reconsideration* of the order which is the subject of the appeal or petition ... (Emphasis added.)

Consequently, a government unit has jurisdiction to act upon a timely filed petition for reconsideration even though an appeal has already been taken.

We note, however, that in the instant case, the Secretary of DOA denied Suburban's request for reconsideration. Under Pa.R.A.P. 1701(b)(3), "when a motion for reconsideration is *denied,* the prior appeal retains its validity; however, when reconsideration is [timely] *granted,* the prior appeal becomes inoperative and appeal time will run anew after the lower court reconsiders the merits of the claim and enters a new order." *Dillon by Dillon v. National Railroad Corp. (Amtrak),* 345 Pa.Superior Ct. 126, 130, 497 A.2d 1336, 1337–1338 (1985) (emphasis in original).

■ While Suburban could have also appealed the propriety of DOA's January 19, 1990 order denying its request for reconsideration, *see Muehleisen v. State Civil Service Commission,* 66 Pa.Commonwealth Ct. 95, 443 A.2d 867 (1982), *affirmed,* 501 Pa. 335, 461 A.2d 615 (1983), it chose not to proceed as such.[3] Instead, Suburban decided only to execute its prior appeal since that appeal still maintained its

---

**3.** Because the January 19, 1990 order of the Secretary of DOA is not before this Court at this time, we need not address whether the Secretary of DOA acted upon Suburban's request for reconsideration within the time limit prescribed by Pa.R.A.P. 1701(b)(3).

validity as a timely appeal of the merits. Accordingly, we shall proceed to review the merits of this case in reference to DOA's November 17, 1989 order.

▮ Suburban argues that the Secretary of DOA erred in concluding that it had been excluded from the Medicaid program for cause and, thus, is statutorily precluded from participation in the PACE program.[4] Specifically, Suburban contends that the stipulation signed by Suburban's present owners cannot be construed as a preclusion from the Medicaid program for cause. We disagree.

One of the conditions agreed to by the parties in the stipulation was that the current owners of Suburban would withdraw and discontinue Suburban's appeal of DPW's decision to deny it enrollment in the Medical Assistance Program. In effect, this condition operates to uphold DPW's decision to deny Suburban enrollment in the Medicaid program for cause.[5]

4. Section 4 of the Pharmaceutical Assistance Contract for the Elderly Act (PACE Act), Act of November 4, 1983, P.L. 217, *as amended,* 62 P.S. § 2904(a.1), provides in pertinent part:

Any physician, pharmacist, pharmacy or corporation owned in whole or in part by a physician or pharmacist enrolled as a provider in the program, or who has prescribed medication for a claimant in the program, who is precluded or excluded for cause from the Department of Public Welfare's Medical Assistance Program shall be precluded or excluded from participation in the program.

5. We note here that the unambiguous language of the stipulation entered into by the parties speaks for itself and, therefore, we find no merit in Suburban's contention that the stipulation was solely executed for the purpose of resolving existing medicaid claims between DPW and Suburban.

Likewise, we find no merit to Suburban's contention that the Secretary of DOA committed legal error by basing her conclusion that Suburban had been excluded from the Medicaid program for cause on evidence that was ordered stricken from the record. From our independent review of the record, we conclude that there was other competent evidence in the record to support the Secretary's conclusion. For example, in his testimony during direct examination, DOA witness, Mr. Lenahan, an attorney assigned to DPW who personally signed the stipulation, explained numerous times that the reasons listed in DPW's letter to Suburban disapproving Suburban's enrollment in the Medicaid program constituted cause for preclusion. (N.T., July 21, 1989 Hearing, pp. 15, 19–20).

Suburban, however, contends that the reasons for which DPW denied Suburban enrollment in the Medicaid program are no longer valid since neither Dzierza nor Lidia Sawaryan[6] are presently employed by Suburban. Consequently, Suburban argues that the Secretary of DOA committed legal error by equating a disapproval of enrollment in the Medicaid program, which explicitly was conditioned on the continued presence of former employees, with an exclusion for cause under the Medicaid program.

From our reading of DPW's letter disapproving Suburban's enrollment with the Medical Assistance Program, we conclude that DPW's disapproval of Suburban's enrollment application was not solely conditioned upon the continued presence of Dzierza and Sawaryan as employees. This letter, which was incorporated and made part of the stipulation between the parties, specified the following reasons for DPW's disapproval of Suburban's enrollment application:

(1) The outstanding criminal charges against Dzierza for violations of medical assistance fraud and abuse control. As one of the previous owners of Suburban, Dzierza bore the responsibility for Suburban's violations of medical assistance regulations; and

(2) The continued employment of Dzierza and Linda [sic] Sawaryan as pharmacists of Suburban.

Moreover, the final paragraph of that same letter summarized what had to be resolved in Suburban's favor for Suburban not to be precluded from the Medicaid program for cause. That paragraph reads:

The Department will reconsider its denials [sic] of enrollment at a later time if the outstanding criminal charges and any final administrative action (which may be taken on an appeal from the Bureau of Quality Assurance evidence) are decided in your favor.

---

**6.** Lidia Sawaryan was a pharmacy intern employed by Suburban who was being investigated by DPW for substituting and misbranding drugs dispensed to medical assistance recipients.

When Dzierza plead guilty to Medicaid fraud, cause was established for Suburban's preclusion from the Medicaid program.[7]

In the alternative, it could be argued that once DPW determined that cause existed to preclude Suburban's participation in the Medicaid program, Suburban automatically had to be precluded from the PACE program. The PACE Act does not require that DOA should have to analyze the situation anew and make another determination as to whether the cause that precluded a pharmacy from participation in the Medicaid program still exists. If this were allowed, pharmacies such as Suburban might successfully be able to skirt the law by attempting to remedy all of the conditions which originally caused their preclusion from the Medicaid program in order to gain acceptance into the PACE program.

In this case, although Dzierza and Sawaryan are no longer employed by Suburban, they were Suburban employees at the time Suburban applied for enrollment in the Medicaid program. When the current owners of Suburban signed the stipulation in which they agreed to withdraw and discontinue Suburban's right to appeal DPW's determination, Suburban also lost the right to remedy the underlying conditions surrounding its preclusion from the Medicaid program. Consequently, Suburban was precluded from the Medicaid program for cause. Once cause was established by DPW, DOA did not have to make its own independent determination.

For the above reasons, we affirm.

## ORDER

AND NOW, this 16th day of July, 1990, the order of the Department of Aging is hereby affirmed.

7. Additionally, we charge Suburban with knowledge of Section 4 of the PACE Act, 62 P.S. § 2904(a.1), which mandates that a pharmacy which is excluded for cause from DPW's medical assistance program shall be precluded from participation in the PACE program, when its current owners signed the stipulation which relinquished Suburban's right to appeal this determination. *See Jack v. Department of Public Welfare,* 130 Pa.Commonwealth Ct. 549, 568 A.2d 1339 (1990).

Former President Judge CRUMLISH, Jr., did not participate in the decision in this case.