**CANTEEN CORPORATION,**
**Petitioner,**

v.

**COMMONWEALTH of Pennsylvania,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2002.

Decided March 6, 2003.

---

Robert R. Batt, Philadelphia and Peter L. Faber, New York, for petitioner.

Clinton G. Smith, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge LEADBETTER.[1]

The issue presented is whether a corporate taxpayer's gain from the fictional liq-

---

1. This case was reassigned to the author on    November 5, 2002.

uidation of assets deemed to occur under a federal tax election pursuant to 26 U.S.C. § 338(h)(10) is taxable by the Commonwealth of Pennsylvania as business income or non-business income. In exceptions to the decision by a panel of this court,[2] Canteen Corporation (Canteen) challenges the legal conclusion that its parent corporation's federal tax election under Section 338(h)(10) of the Internal Revenue Code (IRC), 26 U.S.C. § 338(h)(10), which results in a fictitious sale of Canteen's assets in a deemed liquidation, requires that the fictional gain be treated as business income pursuant to the Department's regulation at 61 Pa.Code § 153.81(d)(1).[3] Canteen argues that the gain from the fictional liquidation of assets should be treated the same as that from an actual liquidation, which is considered non-business income pursuant to our Supreme Court's holding in *Laurel Pipe Line Comp. v. Board of Finance and Revenue*, 537 Pa. 205, 642 A.2d 472 (1994). We agree and, therefore, reverse.

Canteen is incorporated in Delaware, headquartered in North Carolina and conducts its food services business operations throughout most of the contiguous 48 states including Pennsylvania. During the relevant tax period, Canteen was a wholly-owned subsidiary of I.M. Vending, Inc. (Vending); Vending was a wholly-owned subsidiary of Canteen Holdings, Inc. (Holdings); Holdings was a subsidiary of Flagstar Companies, Inc. (Flagstar). In June of 1994, as a part of Flagstar's divestiture plan, Holdings sold Vending to Compass Holdings, Inc. (Compass), an unrelated corporation. Canteen, as a subsidiary of Vending, was actually conveyed to Compass as an asset and did not participate as a party to the sale or receive cash or other proceeds as a result of the sale.

After completion of the sale, Holdings and Compass elected to apply IRC Section 338(h)(10) for federal income tax purposes. Under the Section 338(h)(10) election, the sale of Vending stock was treated as if Vending sold all of its assets in liquidation and distributed the proceeds to its parent, Holdings, the selling corporation. As a subsidiary of Vending, Canteen was likewise deemed to have sold all of its assets in liquidation and to have immediately distributed the proceeds to Vending.[4] As a

---

**2.** *Canteen Corp. v. Commonwealth,* 792 A.2d 14 (Pa.Cmwlth.2002).

**3.** The regulation states:

(d) *Effect of election on tax liability.*

(1) *Corporate Net Income Tax.* Taxable income generated as a result of a Section 338 election is subject to Pennsylvania Corporate Net Income Tax and treated as business income subject to apportionment, if the taxpayer was entitled to apportionment for the taxable year ending immediately prior to the acquisition date. The income consequences of a Section 338 election shall be reflected on a separate company basis and not as part of a combined or consolidated report.

61 Pa.Code § 153.81(d)(1).

**4.** In the panel opinion, Judge Kelley accurately described the operative effect of a Section 338(h)(10) election as follows:

[W]here the parent corporation (seller) sells the stock of its subsidiary (target) to another corporation (buyer), the seller and the buyer may elect under Section 338(h)(10) of the IRC to treat the stock sale as if the subsidiary, while owned by the seller, sold all of its assets in complete liquidation. 26 U.S.C. § 338(h)(10). The subsidiary then recognizes a gain or loss on the deemed sale of its assets, which is included in the seller's consolidated federal tax return. *Id.*

. . .

The effect of Section 338(h)(10) is to create a fiction in which the amount paid for the shares of stock is treated as having been paid for the assets of the subject corporation for federal tax purposes. The sold subsidiary reports the gain or loss on the deemed sale of its assets based upon the difference between the sale proceeds and the tax cost (basis) of those assets. For federal income tax purposes, the transac-

result of the Section 338(h)(10) election, Canteen realized a fictitious gain for both state and federal income tax purposes.

■ Pursuant to Pennsylvania's Tax Code,[5] which imposes a corporate net income tax on certain allocated and apportioned income taxable under the federal tax code, Canteen reported a fictitious gain on its Pennsylvania corporate tax return for the relevant tax period from January 1 through June 17, 1994.[6] See Section 401(3) of the Tax Code, 72 P.S. § 7401(3). Canteen reported the gain as non-business income, which in this case resulted in a lower tax liability than would ensue if Canteen reported the gain as business income.[7] On settlement, the Department treated the gain as business income and, consequently, increased Canteen's tax liability. Canteen petitioned the Board of Appeals for resettlement of its tax liability, which the Board denied. Thereafter, Canteen petitioned for review by the Board of Finance and Revenue, which also denied relief. On appeal to our court, a three-judge panel functioning as a trial court[8] determined that the Department properly characterized Canteen's gain as business income and, therefore, affirmed the Board of Finance and Revenue. See Canteen Corp. v. Commonwealth, 792 A.2d 14 (Pa. Cmwlth.2002). Canteen filed the present exceptions to the panel's decision, which we decide en banc.

■ Pennsylvania's corporate income tax is an excise tax on the privilege of earning income and, therefore, under the Commerce Clause of the United States Constitution, Pennsylvania may subject to taxation only that part of corporate income

---

tion is treated not as a purchase of the target's stock, but, rather, as if the target had sold its assets and distributed the sale [proceeds] to its parent corporation in complete liquidation, even though no liquidation of the target corporation actually occurs. By treating the sale of stock as the sale of assets, the assets take on a new tax basis equal generally to the price paid by the buyer for the subsidiary's stock and since the purchase price presumably exceeds their historic cost basis in the hands of the subsidiary, the post-transaction depreciation deductions with respect to the subsidiary's assets are increased. The deemed distribution of the sale proceeds from the subsidiary to the parent is tax-free and the parent's actual sale of the subsidiary's stock is ignored for federal tax purposes.
Canteen Corp., 792 A.2d at 19.

5. Act of March 4, 1971, P.L. 6, as amended, 72 P.S. §§ 7101–10004.

6. Canteen declared a Pennsylvania tax liability of $36,231.00 based on taxable income of $302,178.00. Canteen calculated its taxable income by allocating $1,974,875.00 of the total $199,579,941.00 fictitious gain to Pennsylvania based on the ratio of Pennsylvania assets to its total assets. Canteen subtracted from the $1,974,875.00 gain allocated to Pennsylvania, a business loss of $1,672,227.00 allocated to Pennsylvania (based on apportionment of a total loss of $39,186,087.00), yielding a total taxable income of $302,178.00. The Department increased Canteen's tax liability to $821,227.00 based on its characterization of the gain as business income.

7. We note that the characterization of corporate income as "non-business" will not always be to the corporation's advantage; this will depend upon the geographical distribution of both the corporation's assets and its business operations. Where the greater portion of a corporation's assets are located in Pennsylvania, characterizing income as "non-business" will likely result in a greater tax advantage to the Commonwealth than to the taxpayer. See Welded Tube Co. of America v. Commonwealth, 101 Pa.Cmwlth. 32, 515 A.2d 988 (1986).

8. In appeals from decisions of the Board of Finance and Revenue, the Commonwealth Court's review is de novo because we function as a trial court, even though such cases are heard in our appellate jurisdiction. Norris v. Commonwealth, 155 Pa.Cmwlth. 423, 625 A.2d 179, 182 (1993).

reasonably related to the privilege exercised in this Commonwealth. *Erieview Cartage, Inc. v. Commonwealth*, 654 A.2d 276, 278 (Pa.Cmwlth.1995). The method of determining what portion of income may constitutionally be attributed to Pennsylvania differs depending upon whether the income is classified as "business" or "non-business." The tax on business income is based upon the ratio of the corporation's payroll, property, and receipts within Pennsylvania to its total payroll, property, and receipts; the tax on non-business income is limited to the gain on the sale of real or tangible personal property located in Pennsylvania. Section 401(3)2(a) of the Tax Code, 72 P.S. § 7401(3)2(a).

In 1994, the Pennsylvania Tax Code defined "business income" as "income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations." Section 401(3)2(a)(1)(A) of the Tax Code, 72 P.S. § 7401(3)2(a)(1)(A).[9] The Tax Code defined "non-business income" as "all income other than business income." Section 401(3)2(a)(1)(D) of the Tax Code, 72 P.S. § 7401(3)2(a)(1)(D).[10]

■ Based on the statutory definition of "business income" in Section 401(3) of the Tax Code, gain from the sale of a corporation's property is business income if either (1) the corporation regularly engages in the type of transaction that produced the

gain, *i.e.*, "the transactional test," or (2) the gain arises from the sale of an asset which the taxpayer acquired, managed and disposed of as an integral part of its regular business, *i.e.*, "the functional test." *Laurel Pipe Line*, 537 Pa. at 209–10, 642 A.2d at 474–75. *See also Ross–Araco Corp. v. Commonwealth*, 544 Pa. 74, 674 A.2d 691 (1996) [stating that in *Laurel Pipe Line* the Pennsylvania Supreme Court adopted the transactional and functional tests first described by the Commonwealth Court in *Welded Tube Co. of America v. Commonwealth*, 101 Pa. Cmwlth. 32, 515 A.2d 988 (1986) ].

In *Laurel Pipe Line*, our Supreme Court applied these tests to determine the proper characterization of income from the sale of one of the two pipelines operated by Laurel. The Department agreed that Laurel was not in the business of selling its pipelines and, therefore, the sale proceeds were not business income under the transactional test. In concluding that the sale also did not generate business income under the functional test, the Court reasoned as follows:

> The statutory definition of business income requires that "the acquisition, management, *and disposition* of the property constitute integral parts of the taxpayer's *regular* trade or business operations." 72 P.S. § 7401(3)2(a)(1)(A) (emphasis added).
>
> . . . .
>
> In our view, the pipeline was not disposed of as an integral part of Laurel's regular trade or business. Rather, the

---

9. In 2001, the legislature amended the definition of "business income." As amended, income is "business income" if "the acquisition, management *or* disposition of the property constitutes an integral part of the taxpayer's regular trade or business." The amendment also added a second sentence, which states, "The term includes all income which is ap-

portionable under the Constitution of the United States." 72 P.S. § 7401(3)2(a)(1)(A).

10. In the 2001 amendment, the legislature also amended the definition of "non-business income" by adding, "The term does not include income which is apportionable under the Constitution of the United States." 72 P.S. § 7401(3)2(a)(1)(D).

effect of the sale was that the company liquidated a portion of its assets. This is evidenced by the fact that the proceeds of the sale were not reinvested back into operations of the business, but were distributed entirely to the stockholders of the corporation.

*Laurel Pipe Line*, 537 Pa. at 211, 642 A.2d at 475. The critical act of distributing the proceeds of the asset liquidation to the shareholders distinguished the decision in *Laurel Pipe Line* from that in *Welded Tube*, where the proceeds from the sale of one of the company's two tube manufacturing plants was reinvested in the business and, therefore, under the functional test, was business income.

■ As in *Laurel Pipe Line*, in the present case there is no room to dispute that Canteen's asset liquidation did not generate business income under the transactional test. Canteen conducts a food service business and, therefore, the fictional liquidation of assets stemming from the parent corporation's Section 338 election is not a type of transaction in which Canteen regularly engages. As in *Laurel Pipe Line*, Canteen liquidated assets and distributed the proceeds to the stockholder. This liquidation and distribution, deemed to have occurred as a result of the Section 338(h)(10) election, cannot be recognized by the Commonwealth on the one hand in order to yield a fictitious gain but ignored on the other hand in order to avoid the holding in *Laurel Pipe Line*.

The panel misapplied *Laurel Pipe Line* to reach a result that is inconsistent with the definition of "business income" in our corporate income tax statute and that ignores the Section 338(h)(10) election while still employing the fiction such an election creates to tax the fictional income. If we ignore the fiction arising under the Section 338(h)(10) election, Canteen has no gain from the transaction and, if we embrace the election, Canteen is deemed to have sold all of its assets in a complete liquidation, which results in non-business income.

■ Our conclusion that Canteen's fictitious gain must be treated as non-business income is not changed by the Department's regulation at 61 Pa.Code § 153.81(d)(1), which directs that taxable income generated as a result of a Section 338 election is treated as business income.[11] It remains generally true that such a regulation has the force of law. *Teledyne Columbia–Summerill Carnegie v. Unemployment Comp. Bd. of Review*, 160 Pa.Cmwlth. 17, 634 A.2d 665, 668 (1993). Moreover, we recognize that such a regulation can be of great value in providing taxpayers a clear interpretation of statutory language upon which they can rely in planning their business affairs. However, in the present case, the application of the regulation conflicts with our Supreme Court's interpretation of the underlying statute in *Laurel Pipe Line*. Because a regulation must be consistent with

---

11. Canteen argues that subsection 61 Pa.Code § 153.81(d)(1) is intended to apply only to elections under Section 338(g) of the Internal Revenue Code, and not to elections under Section 338(h)(10), because § 153.81(a) refers to a type of tax return which would not be filed in the Section 338(h)(10) context. However, the language of subsection (d)(1) is both inclusive and unambiguous. Moreover, the Department disputes Canteen's construction, and its interpretation of its own regulation should be given some measure of deference. *See Rump v. Aetna Cas. and Sur. Co.*, 551 Pa. 339, 348, 710 A.2d 1093, 1098 (1998). Therefore, the inapplicability of subsection (d)(1) in the context of a Section 338(h)(10) election is due to its conflict with the Court's interpretation of the Tax Code in *Laurel Pipe Line* rather than any inference of Departmental intent to limit the regulation to only certain elections under Section 338.

the statute under which it is promulgated, the regulation is not lawfully applied to the present case. *See Rump v. Aetna Cas. and Sur. Co.,* 551 Pa. 339, 348, 710 A.2d 1093, 1098 (1998) (holding that interpretation of a statute is a question of law for the court and when the court determines that an interpretive regulation is clearly erroneous or violates legislative intent, the court will disregard the regulation). *See also Franks v. Dep't of Pub. Welfare,* 804 A.2d 144, 146 (Pa.Cmwlth.2002).

Accordingly, the exceptions to this court's order of February 8, 2002 are sustained and judgment is entered in favor of taxpayer, Canteen Corporation.

### ORDER

AND NOW, this 6th day of March, 2003, the EXCEPTIONS to the order of February 8, 2002 in the above captioned matter are SUSTAINED. Judgment is hereby entered in favor of the petitioner, Canteen Corporation.

DISSENTING OPINION by Judge McGINLEY.

I respectfully dissent to the majority's conclusion that Canteen's "gain from the fictional liquidation of assets deemed to occur under a federal tax election pursuant to 26 U.S.C. § 338(h)(10) is taxable by the Commonwealth" as non-business income.

The majority agrees with Canteen's argument that "the gain from the *fictional* liquidation of assets should be treated the same as that from an *actual* liquidation, which is considered non-business income pursuant to our Supreme Court's holding in *Laurel Pipe Line Comp. v. Board of Finance and Revenue,* 537 Pa. 205, 642 A.2d 472 (1994)." Majority Opinion at 596 (emphasis added). However, *Laurel Pipe Line Company* is distinguishable in that it involved an actual liquidation as opposed to the "deemed liquidation" in the present controversy.

When Laurel Pipe Line Company (Laurel) sold its unprofitable Aliquippa–Cleveland pipeline, it "liquidated a portion of its assets." *Id.* at 211, 642 A.2d at 475. After the sale, Laurel continued to operate a second pipeline. Also, Laurel distributed the proceeds to stockholders rather than reinvest them in the business. Our Pennsylvania Supreme Court determined that the gain from the sale of the pipeline was nonbusiness income.

Here, Canteen was a subsidiary of Vending, the owner of Canteen's stock. Vending was a subsidiary of Holdings, which sold the stock to Compass. Holdings and Compass treated the sale of stock as a sale of assets for federal tax purposes. Canteen was "deemed" to have sold its assets in complete liquidation. Although Canteen reported its gain as nonbusiness income, the Department of Revenue treated Canteen's gain as business income and increased Canteen's tax liability. Contrary to the majority's view, the actual liquidation in *Laurel Pipe Line Company* presents a different set of circumstances than the fictional liquidation in the present controversy.

The majority correctly notes that the transactional test and the functional test are used to determine whether the gain from the sale of property is "business income," as specified in Section 401(3)2.(a)(1)(A) of the Tax Code, 72 P.S. § 7401(3)2.(a)(1)(A). In addition, the majority explains that the functional test focuses on the gain arising "from the sale of an asset which the taxpayer acquired, managed and disposed of as an integral part of its regular business." Majority Opinion at 598 (citations omitted).

Nevertheless, the majority misconstrues the functional test when it states that "[a]s in Laurel Pipe Line, Canteen 'liquidated

assets and distributed the proceeds to the stockholder." Majority Opinion at 599. I disagree with the majority's conclusion that under the functional test, Canteen's gain did not constitute business income.

As the Honorable James R. Kelley[1] accurately determined:

> Under the functional test, Canteen's gain from the transaction constitutes business income. The acquisition and management of Canteen's assets as well as the "disposition" of those assets for Section 338 purposes constitute integral parts of Canteen's business. Those assets were and are used to generate business income. The nature of this transaction did not result in the cessation of Canteen's business. Furthermore, it appears that Canteen's gain from the transaction was used in the continuation of its business operations, which never ceased.

*Canteen Corporation v. Commonwealth of Pennsylvania,* 792 A.2d 14, 22 (Pa. Cmwlth.2002).[2]

This Court also addressed Canteen's argument that but for the election, the stock transaction would not have involved Canteen nor resulted in income for Canteen. In his opinion, Judge Kelley concluded

that Canteen's "argument completely ignores the fact that *Canteen incurred a gain* as a result of the sale of its parent corporation's stock in the transaction." *Id.* at 22 (emphasis added). Canteen's enhanced financial position after the sale of the stock should not be overlooked.[3]

Accordingly, I would dismiss the exceptions and enter judgment in favor of the Commonwealth.

Judge PELLEGRINI joins in this dissent.

---

1. Judge Kelley authored this Court's opinion that affirmed the Board of Finance and Revenue.

2. Although this Court hears appeals from Board orders in our appellate jurisdiction, this Court essentially functions as a trial court. *Norris v. Commonwealth of Pennsylvania,* 155 Pa.Cmwlth. 423, 625 A.2d 179 (1993). "The stipulation of facts is binding and conclusive upon this Court, but we may draw our own legal conclusions from those facts." *Id.* at 182 *citing Suburban/Bustleton Pharmacy v. Department of Aging,* 134 Pa. Cmwlth. 71, 579 A.2d 426 (1990).

3. Finally, the majority observes that its determination that Canteen's fictitious gain amounts to non-business income "is not

changed by the Department's regulation at 61 Pa.Code § 153.81(d)(1), which directs that taxable income generated as a result of a Section 338 election is treated as business income." Majority Opinion at 599 (footnote omitted). In particular, the majority reasons that "the application of the regulation conflicts with our Supreme Court's interpretation of the underlying statute in Laurel Pipe Line." Majority Opinion at 599.

As stated, I disagree with the majority's reliance upon *Laurel Pipe Line Company.* I believe this Court properly found the Department of Revenue regulation to be consistent with statutory law as the stock transaction was not an actual liquidation. *Canteen Corporation,* 792 A.2d at 21.