430 Stump Road, LLP,              :
              Petitioner     :
                            :
      v.                    :
                            :
Commonwealth of Pennsylvania,  :   No. 502 F.R. 2022
              Respondent  :   Argued: June 6, 2024

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE LORI A. DUMAS, Judge
              HONORABLE STACY WALLACE, Judge

OPINION
BY JUDGE FIZZANO CANNON                 FILED: July 3, 2024

       430 Stump Road, LLP (Stump LLP) petitions for review of the Order of the Board of Finance and Revenue (F&R) dated August 25, 2022 (Order) and served September 2, 2022, which upheld a determination of the Board of Appeals (BOA) and the assessment of realty transfer tax on the transfer of a real estate company. Upon review, we reverse.

## I. Background

       In 1994, Stump LLP purchased real property located at 430 Stump Road, Montgomeryville, Pennsylvania (Real Property). *430 Stump Rd., LLP*, No. 2200071 (F&R Aug. 25, 2022) (F&R Dec.), at 1. Stump LLP is a limited liability partnership and is a "real estate company" as that term is defined in Section 1101-C of the Tax Reform Code of 1971 (Tax Code),[1] 72 P.S. § 8101-C.[2] Joint Stipulation

---

[1] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101-10004.

[2] Added by the Act of May 5, 1981, P.L. 36.

of Facts filed Nov. 29, 2023 (Stip.) at 2. Prior to the death of Allen Kanter (Settlor), the Allen L. Kanter Revocable Trust (Revocable Trust) owned 98% of Stump LLP. *Id.* The terms of the Revocable Trust designated a second trust, the Allen L. Kanter Marital Trust FBO Valentina Kanter (Marital Trust), as the beneficiary to receive the Revocable Trust's 98% partnership interest in Stump LLP after Settlor's death. *Id.* at 3. Settlor's wife was the beneficiary of the Marital Trust. *Id.* In March 2017, upon Settlor's death, the Revocable Trust transferred its partnership interest in Stump LLP to the Marital Trust. *Id.*

On September 30, 2021, the Department of Revenue, Bureau of Individual Taxes ("Department"), issued a Notice of Assessment to Stump LLP, imposing real estate transfer tax on the computed value of the Real Property. F&R Dec. at 1-2. The Department reasoned that the transaction was subject to real estate transfer tax because it was not a transfer of real estate due to merger. *Id.* at 2.

Stump LLP petitioned for review by the BOA, arguing that the transfer was not subject to the transfer tax because it was a transfer from the trustee of a living trust to the beneficiary of a living trust. F&R Dec. at 2. The BOA rejected that argument and sustained the transfer tax assessment, positing that the exception advanced by Stump LLP applies only to a direct transfer of realty, not to the transfer of an interest in a real estate company. *Id.* The BOA likewise rejected Stump LLP's argument that the transfer involved no change in ownership as the beneficiaries of the two trusts were the same; the BOA stated that a trust itself does not have owners, and as a transfer of a 98% interest in Stump LLP, a real estate company, was made between the trusts, the Department properly assessed tax on the computed value of the Real Property. *Id.*

2

Stump LLP filed a petition for relief with F&R, which denied Stump LLP's petition. F&R Dec. at 5. As to Stump LLP's argument that the transfer was not subject to transfer tax because it was a transfer from a trustee of a living trust to the beneficiary of a living trust, F&R upheld the Department's application of the tax because the transfer at issue was not an actual transfer of an interest in real estate, but a transfer of an ownership interest in a real estate company, which the Department concluded was subject to tax. *Id.* at 6. F&R also found that Stump LLP failed to present sufficient evidence to support its claims that the Department's applicable regulation was improperly promulgated and that the regulation conflicts with the authorizing statute. *Id.* F&R similarly rejected Stump LLP's contention that the transfer was not subject to tax because there was no change in ownership or because the transfer was between members of the same family. *Id.*

Stump LLP then filed a petition for review in this Court.

## II. Issues

Stump LLP asserts the following arguments for review:[3]

A. Under the realty transfer tax statute, the transfer of an interest in . . . Stump [LLP] . . . to the Marital Trust was excluded[4] from realty transfer tax because it was a transfer for no consideration from the trustee of a living

---

[3] This Court's review of an adjudication by F&R is *de novo*. *Ebersole v. Commonwealth*, 303 A.3d 546, 550 n.5 (Pa. Cmwlth. 2023) (citing *Anastasi Brothers Corp. v. Bd. of Fin. & Revenue*, 315 A.2d 267, 270 (Pa. 1974)). Such a case is within our appellate jurisdiction, but this Court functions as a trial court in reviewing F&R determinations. *Downs Racing, L.P. v. Commonwealth*, 42 A.3d 1222, 1227 n.5 (Pa. Cmwlth. 2012).

[4] As discussed in Section III.C below, a tax exclusion and a tax exemption are distinct concepts, but the Tax Code's application of either label is not determinative. *See Plum Borough Sch. Dist. v. Commonwealth*, 860 A.2d 1155, 1157 (Pa. Cmwlth. 2004), *aff'd per curiam*, 891 A.2d 726 (Pa. 2006).

trust after the death of the settlor to the beneficiary of the living trust.

    B. The Department's regulation, as interpreted by [F&R], is contrary to the realty transfer tax statute, and accordingly the conflicting regulation must give way to the statute.

    C. The exclusion from tax for transfers from a living trust should be strictly construed against the Department.

Stump LLP Br. at ii (internal quotation marks omitted).[5]

## III. Discussion

### A. Transfer from the Trustee to the Beneficiary of a Living Trust

Stump LLP first argues that no transfer tax is due because the transfer was from a trustee of a living trust to the beneficiary of a living trust. F&R contends that, although an actual, *i.e.*, direct, transfer of interest in real estate is not subject to transfer tax, a transfer of ownership interest in a real estate company remains subject to transfer tax under Section 1102-C.3(9.1) of the Tax Code, 72 P.S. § 8102-C.3(9.1).[6] F&R posits that the Tax Code makes distinctions between a direct transfer of real estate and the transfer of an interest in a real estate company. *See* 72 P.S. § 8102-C.3(6) & (20). Accordingly, F&R maintains that a transfer of an interest in a real estate company is subject to transfer tax.

Section 1102-C of the Tax Code provides:

---

[5] Stump LLP initially presented a fourth issue for review, to wit:

    D. [F&R's] reference to the statutory merger or consolidation exclusion of the Tax [] Code for the purposes of assessing realty transfer tax is inapplicable here, as [Stump LLP] is not a corporation, and evidences an improper application of law.

Stump LLP Br. at ii. This argument is no longer at issue, however, because F&R concedes that no corporation is involved in this matter and no statutory merger or consolidation is at issue.

[6] Added by the Act of July 2, 1986, P.L. 318.

Every person who makes, executes, delivers, accepts or presents for recording any document or in whose behalf any document is made, executed, delivered, accepted or presented for recording, shall be subject to pay for and in respect to the transaction or any part thereof, or for or in respect of the vellum parchment or paper upon which such document is written or printed, a State tax at the rate of one per cent of the value of the real estate within this Commonwealth represented by such document, which State tax shall be payable at the earlier of the time the document is presented for recording or within thirty days of acceptance of such document or within thirty days of becoming an acquired company.

72 P.S. § 8102-C.

Section 1101-C of the Tax Code, in pertinent part, defines a "document" as

[a]ny deed, instrument or writing which conveys, transfers, demises, vests, confirms or evidences any transfer or demise of title to real estate in this Commonwealth . . . . "Document" shall also include a declaration of acquisition required to be presented for recording under [S]ection 1102-C.5 of this article.

72 P.S. § 8101-C.

Section 1102-C.5(c) requires that

[w]ithin thirty days after becoming an acquired company, the company shall present a declaration of acquisition with the record of each county in which it holds real estate for the affixation of documentary stamps and recording. Such declaration shall set forth the value of real estate holdings of the acquired company in such county.

Added by the Act of July 2, 1986, P.L. 318, 72 P.S. § 8102-C.5(c).

Section 1102-C.5(a) provides, in pertinent part, that

[a] real estate company is an acquired company upon a change in the ownership interest in the company, however effected, if the change . . . has the effect of transferring,

5

> directly or indirectly, ninety per cent or more of the total ownership interest in the company . . . .

72 P.S. § 8102-C.5(a).

Here, the parties stipulated that Stump LLP is a real estate company. Stip. at 2. They further stipulated that the Revocable Trust transferred its 98% interest in Stump LLP to the Marital Trust. *Id.* Under Section 1102-C.5(a), therefore, Stump LLP became an acquired real estate company upon that transfer. 72 P.S. § 8102-C.5(a). Thus, the transfer imposed a statutory recording obligation of the declaration of acquisition under Section 1102-C.5(c). 72 P.S. § 8102-C.5(c); *see also* Stip., Ex. B at 1 (reflecting the filing of the declaration of acquisition). The declaration of acquisition was, by definition, a "document" triggering an obligation to pay a transfer tax under Sections 1101-C and 1102-C of the Tax Code. 72 P.S. §§ 8101-C & 8102-C.

However, Section 1102-C.3 of the Tax Code lists a number of real estate transfers that are not subject to the real estate transfer tax. Pertinent here, under Section 1102-C.3(9.1), no transfer tax is to be imposed on

> [a] transfer for no or nominal actual consideration from a trustee of a living trust after the death of the settlor of the trust or from a trustee of a trust created pursuant to the will of a decedent to a beneficiary to whom the property is devised or bequeathed.

72 P.S. § 8102-C.3(9.1).

The parties stipulated that the Revocable Trust was a living trust. Stip. at 2. They further stipulated that Allen Kanter was the Settlor of the Revocable Trust, that the transfer of the Revocable Trust's 98% interest in Stump LLP occurred after Settlor's death, and that the Marital Trust was the beneficiary of the Revocable Trust. *Id.* at 3. Therefore, the transfer facially met the requirements of Section 1102-C.3(9.1).

6

F&R contends, however, that Section 1102-C.3(9.1) applies only to a transfer of real estate, not to a transfer of an interest in a real estate company. We cannot agree. Nothing in the Tax Code demonstrates a legislative intent to limit the application of Section 1102-C.3(9.1) in such a manner.

Section 1102-C of the Tax Code imposes the transfer tax upon the filing of a "document," and Section 1101-C expressly includes within the definition of a "document" *both* a writing that evidences a transfer of title to real estate *and* a declaration of acquisition relating to a real estate company. 72 P.S. §§ 8101-C & 8102-C. Had the legislature intended to differentiate between those two kinds of documents for purposes of the real estate transfer tax, it could have done so, but it did not. Neither does the Tax Code make such a distinction in listing the transfers *not* subject to the real estate transfer tax. We cannot add a provision to the Tax Code. *Ebersole v. Commonwealth*, 303 A.3d 546, 556 (Pa. Cmwlth. 2023). As this Court has repeatedly observed, "[w]hen interpreting a statute, we must listen attentively to what the statute says, but also to what it does not say." *Id.* (quoting *In re Canvassing Observation*, 241 A.3d 339, 349 (Pa. 2020) (internal quotation marks omitted)).

Further, we observe that, in *Health Group Care Centers, Inc. v. City of Pittsburgh*, 552 A.2d 323 (Pa. Cmwlth. 1988), this Court upheld the imposition of a Pittsburgh real estate transfer tax on that part of the purchase of a corporation attributable to the value of the nursing home that constituted the corporation's main asset. Similarly, in *Equitable Life Assurance Society v. Murphy*, 621 A.2d 1078 (Pa. Cmwlth. 1993), this Court upheld the imposition of a Philadelphia real estate transfer tax on what was essentially one equal partner's buyout of the partnership interest of the other equal partner, a corporation, where the sole asset of the partnership was a piece of real property and the sole asset of the selling partner was its interest in the

7

partnership. Thus, in both instances, this Court treated the transfers of the corporations as transfers of those corporations' interests in real property for real estate transfer tax purposes.[7] Notably, in *Equitable Life*, this Court provided the following useful analysis:

> [T]here should be no distinction made between equitable and legal transfers of real property. . . . *We can discern no reason for distinguishing between a direct conveyance by deed and an indirect transfer through the sale of corporate stock where either method evidences an identical transfer of ownership interest in the real property.* If the execution or presentation of a deed within the taxable jurisdiction has been upheld as a valid taxable event, . . . then the recording of an equitable transfer of real property within that jurisdiction should also be taxable.
>
> . . . .
>
> Despite [a]ppellants' citations to the contrary, *we have previously recognized that transfers of "real estate corporations" constitute transfers of "interests" in property held by those corporations, which are properly taxed* by municipalities. . . . In *Health Group*, the City of Pittsburgh, like Philadelphia here, amended its city code to specify that stock purchases would be taxed as realty transfers when most of the corporate assets . . . were in the form of real estate. . . . Although *Health Group* was decided under the [L]ocal [T]ax [E]nabling [A]ct[8] . . . , it is still applicable here for the proposition that some stock transfers *must be recognized for the real estate transfers that they actually are*. . . .

*Equitable Life*, 621 A.2d at 1084-85 (emphasis added) (footnotes omitted). Although both *Health Group* and *Equitable Life* related to city real estate transfer

---

[7] Both real estate corporations and real estate partnerships are real estate companies as defined in Section 1101-C of the Tax Code. 72 P.S. § 8101-C.

[8] Act of December 31, 1965, P.L. 1257, No. 511, *as amended*, 53 P.S. §§6924.101-6924.901.

8

taxes rather than real estate transfer taxes imposed under the Tax Code, this Court's reasoning in those cases applies equally here, *i.e.*, a transfer of a real estate company constitutes a transfer of the interest in property held by that real estate company for transfer tax purposes.

Based on our analysis of Sections 1101-C, 1102-C, and 1102-C.3(9.1) of the Tax Code, and also consistent with *Health Group* and *Equitable Life*, we conclude that a transfer of a real estate company is the equivalent of a transfer of the real estate company's interest in the real estate it owns for purposes of the real estate transfer tax under the Tax Code. That being the case, a provision that the transfer of real property is *not* subject to taxation applies equally to the transfer of a real estate company in the absence of any indication of a contrary legislative intent. Accordingly, we agree with Stump LLP that the Revocable Trust's transfer of its 98% interest in Stump LLP to the Marital Trust after Settlor's death was not subject to the real estate transfer tax, as a transfer from the trustee of a living trust after the death of the settlor, pursuant to Section 1102-C.3(9.1) of the Tax Code, 72 P.S. § 8102-C.3(9.1).

**B. The Department's Related Regulation**

Section 91.193(b) of the Department's regulations promulgated in relation to the Tax Code lists a number of transactions that are not subject to real estate transfer tax, including, consistent with the Tax Code, a "[t]ransfer[] from the trustee of a testamentary trust or living trust after the death of the settlor . . . ." 61 Pa. Code § 91.193(b)(34). However, Section 91.193(c) purports to limit the effect of that provision by stating that "Subsection (b) has no application to acquisitions of real estate companies as provided in [Section] 91.202 (relating to acquired real

9

estate company).")[9] 61 Pa. Code § 91.193(c). Stump LLP asserts that this limitation conflicts with the Tax Code and is, therefore, invalid as applied here. We agree.

We recognize that the Department's regulations generally have the force of law. *Canteen Corp. v. Commonwealth*, 818 A.2d 594, 599 (Pa. Cmwlth. 2003), *aff'd per curiam*, 854 A.2d 440 (Pa. 2004) (citing *Teledyne Columbia-Summerill Carnegie v. Unemployment Comp. Bd. of Rev.*, 634 A.2d 665, 668 (Pa. Cmwlth. 1993)). However, where a regulation is not consistent with the statute under which it is promulgated, the regulation is not lawfully applied. *Canteen Corp.*, 818 A.2d at 599-600 (citing *Rump v. Aetna Cas. and Sur. Co.*, 710 A.2d 1093, 1098 (Pa. 1998) (holding that interpretation of a statute is a question of law for the court and when the court determines that an interpretive regulation is clearly erroneous or violates legislative intent, the court will disregard the regulation)).

Here, the Department's application of Section 91.193(c) conflicts with this Court's interpretation of the Tax Code in Section A above. Under this Court's analysis in Section A above, transfers of real estate companies constitute transfers of the interests in real property held by such companies for transfer tax purposes. As further explained above, we have also concluded that the Tax Code's provision that the transfer of real property is not subject to taxation applies equally to the transfer of a real estate company. Accordingly, the Department's application of Section 91.193(c) in a manner not consistent with that conclusion is improper and will be disregarded.

---

[9] Section 91.202 of the regulations, consistent with the Tax Code, provides that "[a] real estate company becomes acquired upon a change in the ownership of the company, if the change in the ownership interest . . . has the effect of transferring, directly or indirectly, 90% or more of the total capital and profits ownership interest in the company." 61 Pa. Code § 91.202(a)(2).

10

## C. The Disputed Burden of Proof

This Court has explained the distinction between an exclusion from tax and an exemption from tax as follows:

> Exemptions are items which are within the scope of the general language of the statute imposing the tax, *Commonwealth v. Sitkin's Junk Co*[.], . . . 194 A.2d 199 ([Pa.] 1963), while "exclusions are items which were not intended to be taxed in the first place." *Rossi v. Commonwealth of* [*Pa.*], . . . 342 A.2d 119, 122 (Pa. Cmwlth. 1975). The legal effect of that distinction is that exemptions are to be strictly construed against the taxpayer; exclusions are to be construed against the taxing body. *Equitable Gas Co. v. Commonwealth of* [*Pa.*], . . . 335 A.2d 892 (Pa. Cmwlth.), *aff*[']*d* [*per curiam*], . . . 347 A.2d 674 ([Pa.] 1975). However, "[w]hether a taxing provision is an 'exemption' . . . or an 'exclusion' . . . is not controlled by what it is called, but by its language and the effect of that language." *Adelphia House P*[']*ship v. Commonwealth of* [*Pa.*], 709 A.2d 967, 970 (Pa. Cmwlth. 1998).

*Plum Borough Sch. Dist. v. Commonwealth*, 860 A.2d 1155, 1157 n.4 (Pa. Cmwlth. 2004), *aff'd per curiam*, 891 A.2 726 (Pa. 2006).

Here, the parties dispute whether the Tax Code provision at issue is properly considered an exclusion or an exemption. However, we need not decide that question. Even assuming that Stump LLP bore the burden of proving that no transfer tax was owed on the transaction between the trusts by reason of an exemption, we conclude that Stump LLP has met that burden as a matter of law, for the reasons discussed above. Accordingly, we do not reach the question of whether the provision at issue is an exclusion or an exemption.

11

## IV. Conclusion

Based on the foregoing discussion, we reverse F&R's order.


_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

430 Stump Road, LLP,          :
                Petitioner   :
                                   :
        v.                     :
                                   :
Commonwealth of Pennsylvania,  :   No. 502 F.R. 2022
                Respondent  :

# **O R D E R**

AND NOW, this 3rd day of July, 2024, the Order of the Board of Finance and Revenue dated August 25, 2022 is REVERSED.

Unless exceptions are filed within 30 days under the provisions of Pa.R.A.P. 1571(i), the prothonotary is directed to enter this order as a final order.

_____
CHRISTINE FIZZANO CANNON, Judge