634 A.2d 665

**TELEDYNE COLUMBIA–SUMMERILL CARNEGIE, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 5, 1993.

Decided Aug. 13, 1993.

Publication Ordered Dec. 8, 1993.

18

Affirmed.

John Ferreira, for petitioner.

No appearance, for respondent.

Richard E. Gordon, for intervenors William Brierton, et al.

Before SMITH and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

SMITH, Judge.

Teledyne Columbia–Summerill Carnegie (Employer) petitions this Court for review of orders of the Unemployment Compensation Board of Review (Board) granting full unemployment benefits to Employer's former employees (collectively, Claimants) who were involuntarily separated from their employment due to a plant closing.[1]

1. The Board issued opinions with respect to five lead Claimants, William J. Brierton, Vincent C. Valent, Joseph Turko, Walter Koishal and

The issues presented on appeal are whether the Board's regulation found at 34 Pa.Code § 65.103 is inconsistent with Section 404(d)(2) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 804(d)(2), and therefore invalid on its face and as applied to this matter; whether the regulation is inconsistent with the Multiemployer Pension Plan Amendment Act of 1980, 26 U.S.C. § 3304a(15), and therefore invalid; and whether the regulation allows offset of retirement benefits against unemployment benefits where an employee has not attained the retirement age specified in the plan at the time of a permanent plant closing but was eligible to retire because of the combination of age and years of service.

Facts as found by the Board are not in dispute. Following a work stoppage after expiration of a collective bargaining agreement between Employer and the United Steel Workers of America on May 1, 1990, the union members returned to work on August 6, 1990. Another work stoppage occurred on October 15, 1990. The Bureau of Unemployment Compensation Benefits and Allowances determined that the bargaining unit employees were eligible for unemployment benefits for the weeks ending August 11, 1990 and October 20, 1990 and thereafter. Employer did not appeal this determination. After Employer notified the union of its decision to close the plant on October 23, 1990, the parties reached a plant closing agreement. When Employer permanently closed its plant on December 28, 1990, Claimants and other employees were permanently separated from employment.

The existing pension agreement which was confirmed in the plant closing agreement provided that in the event of a permanent plant closing, the employees who met specified requirements of the various retirement plans could retire before the normal retirement age of sixty-five. Claimants retired effective January 1, 1991 and began receiving pension benefits. One class of Claimants represented by Brierton and Valent consists of employees who would not have been eligible

Richard C. Serafin, whose factual situations were analogous to those of the other claimants.

for any retirement benefits in the absence of the plant closing, and the other class represented by Turko consists of employees who were already eligible to receive immediate pension benefits at their option due to the plant closing because of their age and years of service.

 The Board affirmed the referee's decision that the unemployment benefits of those Claimants who were entitled to immediate pensions due to the plant closing could not be reduced by retirement benefits; and reversed the referee and concluded that the retirement benefits of those who have not obtained the retirement age specified in the plan but are eligible for pension benefits due to sufficient years of service should not be offset against the unemployment benefits. Consequently, the Board granted full unemployment benefits to Claimants without offsetting retirement benefits. Employer appealed to this Court and Claimants intervened.[2]

 Section 404(d)(2) of the Law provides for the reduction of weekly unemployment benefits by the prorated weekly amount of retirement benefits chargeable to a base year employer.[3] Further, the regulation provides in pertinent part:

2. This Court's scope of review of the Board's order is limited to determining whether the Board's adjudication is in violation of Claimants' constitutional rights, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. *Apple v. Unemployment Compensation Board of Review*, 126 Pa.Commonwealth Ct. 195, 559 A.2d 87 (1989).

3. Section 404(d)(2) provides in relevant part:
 (2)(i) ... for any week with respect to which an individual is receiving a pension, including a governmental or other pension, retirement or retired pay, annuity or any other similar periodic payment, under a plan maintained or contributed to by a base period or chargeable employer, the weekly benefit amount payable to such individual for such week shall be reduced, but not below zero....

 (iii) No deduction shall be made under this clause by reason of the receipt of a pension if the services performed by the individual during the base period or remuneration received for such services for such employer did not affect the individual's eligibility for, or increase the amount of, such pension, retirement or retired pay, annuity or similar payment. This subclause shall not apply to pensions paid under Social Security Act ... or the Railroad Retirement Act of 1974 ... or the corresponding provisions of prior law.

### § 65.103. Separation prior to retirement date.

(a) When an employe has accumulated certain moneys, rights or equities under a retirement pension or annuity plan but is permanently and involuntarily separated from his employment prior to retirement date, and payment is made to him from the moneys or in liquidation of his rights or equities, that payment may not constitute a retirement pension or annuity within the meaning of section 404(d)(4)(iii) of the law (43 P.S. § 804(d)(4)(iii)) [now, Section 404(d)(2)] nor may it be considered a deductible wage replacement under any other provision of the law.

. . . . .

(c) For the purposes of this section, the phrase 'prior to retirement date' means prior to the claimant's attainment of age specified in the retirement plan or program at which the employe may be retired with full or reduced pension rights.

Employer contends that the regulation is invalid because the plain language of Section 404(d)(2) of the Law does not contain an exception for pension benefits received as a result of a permanent and involuntary separation from employment; and because the regulation was last amended in 1976 prior to the legislature's adoption of the pension offset provision in Section 404(d)(2) in 1980.

In *Westinghouse Electric Corp. v. Unemployment Compensation Board of Review*, —— Pa.Commonwealth Ct. ——, 549 A.2d 623 (1988), the employer contended that the 1980 amendment to Section 404(d)(2)(iii) invalidated the regulation. While noting that the 1980 amendment effected a significant change in Section 404(d)(2)(iii), this Court nonetheless upheld the continuing validity of the regulation. After reargument, this Court confirmed its earlier holding and also decided the case involving another Westinghouse employee who was permanently separated from employment due to a plant closing. *See Westinghouse Electric Corp. v. Unemployment Compensation Board of Review*, 127 Pa.Commonwealth Ct. 172, 561 A.2d 80 (1989). The employee had twenty-seven years of service but had not reached a normal retirement age. In affirming the

Board's decision granting benefits without a reduction of retirement benefits, this Court stated:

> Our prior decision in this matter held that the retirement benefits paid to an employee separated from his employment due to a plant closing before he reaches retirement age are not to be deducted from unemployment compensation benefits received by him. The decision was based on the Board's regulation, 34 Pa.Code § 65.103. . . . We held that this regulation remained valid despite a 1980 amendment to the underlying statute which expanded the types of retirement benefits which were to be deducted from unemployment benefits. Our reasoning was that the Board has apparently continued to invoke the regulation, that the amendment to the statute did not purport to limit the Board's ability to regulate the deduction of pension benefits from unemployment benefits, and that neither the Board nor the legislature has sought to change the effect of the regulation.

*Id.* at 174, 561 A.2d at 81 (footnote omitted).

The *Westinghouse* holdings are controlling in this matter, and Employer's challenge to the validity of the Board's regulation must therefore be rejected. A duly promulgated regulation has the force and effect of law, and it is improper for the Board to ignore or fail to apply its own regulation. *Cugini v. Unemployment Compensation Board of Review,* 511 Pa. 264, 512 A.2d 1169 (1986). In the matter sub judice, the Board properly applied Section 65.103 to grant full unemployment benefits to eligible Claimants without deduction of the retirement benefits.

 Employer next contends that the regulation is in direct conflict with 26 U.S.C. § 3304(a)(15) and therefore invalid.[4] The unemployment compensation program is a joint

4. Intervenors filed a motion to strike Employer's reply brief and for leave to file supplemental brief, alleging that by referring to correspondence from the U.S. Department of Labor to the Pennsylvania Department of Labor and Industry on pp. 17–22 and including it in Appendix A to the reply brief, Employer improperly offers evidence not of record on appeal. However, since the correspondence is not related to the

federal/state system in which each state receives federal funds and administers the program. *Novak v. Unemployment Compensation Board of Review,* 73 Pa.Commonwealth Ct. 148, 457 A.2d 610 (1983). To receive federal funds, a state must meet minimum standards set forth in 26 U.S.C. § 3304(a)(15). *Id.* Beyond meeting these minimum standards, a state is free to design its unemployment compensation law and establish its own eligibility requirements. *Cugini.* Neither Section 3304(a)(15) nor Section 404(d)(2) of the Law defines "pension," "retirement pension," or "annuity," and Employer does not cite any authority for the proposition that a state may not define these terms or that the Board's regulation is in direct conflict with Section 3304(a)(15).[5]

Finally, Employer contends that even if the regulation is valid, the Board misinterpreted and improperly expanded its scope. In the case of representative Claimant Turko, who was sixty-one years of age and had not attained the specified normal retirement age, the Board concluded that:

factual issues in this case and rather was relied upon by Employer to support its argument that the regulation conflicts with 26 U.S.C. § 3304(a)(15), Intervenor's contention is without merit and the motion is therefore denied. Intervenors further argue that Employer waived the contention that the regulation is inconsistent with 26 U.S.C. § 3304(a)(15) due to the failure to set forth the argument in its petition for review. Employer stated in the petition that the Board's decision conflicts with applicable Pennsylvania law which must meet minimum standards set forth in 26 U.S.C. § 3404(a)(15). The current Section 404(d)(2) of the Law adopted 26 U.S.C. § 3304(a)(15) and as a result, the language in both statutes is virtually the same. Since Employer's contention can be considered a "subsidiary question fairly comprised [in the statement of objections]," Pa.R.A.P. 1513(a), this Court will address it.

5. The case cited by Employer, *Brown v. Porcher,* 502 F.Supp. 946 (D.S.C.1980), *aff'd in part,* 660 F.2d 1001 (4th Cir.1981), *cert. denied,* 459 U.S. 1150, 103 S.Ct. 796, 74 L.Ed.2d 1000 (1983), is inapplicable to the matter sub judice. In *Brown* the court held that South Carolina, by routinely denying benefits to pregnant women for the reason that they voluntarily left work for a personal reason, did not meet minimum federal standards set forth in Section 3304(a)(12), which expressly prohibits the state from denying compensation on the basis of pregnancy or termination of pregnancy. Here, there are no express provisions prohibiting states from giving full benefits without reduction of retirement benefits in the event of permanent and involuntary separation of employment.

[o]nly claimants' retiring due to a plant closing who reach the *age* specified in the plan to retire with full or reduced benefits are not entitled to exclude their pension benefits, pursuant to Section 65.103.... Those who have *not* attained the *age* of retirement specified in the plan and who are eligible for pension benefits because they have sufficient number of *years of service* are *not* specifically mentioned in subsection (c) of the regulation and therefore are entitled to the exclusion from offset.

Board's Turko Decision, p. 4. (Emphasis in original.) An agency's interpretation of its own regulations may not be disturbed unless it is plainly erroneous or inconsistent. *Federal Kemper Ins. Co. v. Insurance Department,* 509 Pa. 1, 500 A.2d 796 (1985).[6] Inasmuch as Employer has failed to demonstrate to this Court that the Board's interpretation of its regulation is plainly erroneous or inconsistent, the orders of the Board must be affirmed.

## ORDER

AND NOW, this 13th day of August, 1993, the orders of the Unemployment Compensation Board of Review dated July 16, 1992 are affirmed. Intervenors' motion to strike the reply brief filed by Teledyne Columbia–Summerill Carnegie and for leave to file supplemental brief is denied.

FRIEDMAN, J., concurs in result only.

---

6. Employer also argues that the Board's interpretation of Section 65.103 impermissibly discriminates against all of their employees because it will allow an offset of retirement benefits of employees who reach retirement age while a younger employee who is eligible for an immediate pension based upon both age and years of service will not be subject to such offset. However, Employer failed to establish that the Board's interpretation of the regulation has no rational relationship to valid state objectives.