John Edward **ATTENBERGER**,
Petitioner,

v.

**UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,**
Respondent.

Robert J. **JAKUBEK**, Petitioner,

v.

**UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued May 14, 1996.
Decided Aug. 22, 1996.

---

Evalynn Welling, Pittsburgh, for Petitioners.

Lynne Schmidt Bianconi, Pittsburgh, for Intervenor, PPG Industries, Inc.

Before DOYLE and SMITH, JJ., and RODGERS, Senior Judge.

SMITH, Judge.

John Edward Attenberger and Robert J. Jakubek (Claimants) petition for review of orders of the Unemployment Compensation Board of Review (Board) which held that Claimants were ineligible for unemployment benefits under Section 404(d)(2) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 804(d)(2). That section relates to the deduction of pension payments from unemployment benefits.

The primary issue before this Court is whether Claimants were permanently and involuntarily separated from their employment for purposes of 34 Pa.Code § 65.103(a), which protects certain pension payments from offset against unemployment benefits where an employee has been permanently and involuntarily separated from employment prior to retirement. Claimants also question whether a pension offset should be limited to the amount of the pension Claimants would have been eligible to receive had they retired prior to their separation due to a plant closing.

I.

The Board made the following necessary findings of fact with regard to Claimant Attenberger. When the Greensburg facility of Pittsburgh Plate Glass Industries, Inc. (PPG) ceased production on February 18, 1994, At-

tenberger was laid off and began receiving unemployment benefits. Attenberger, an hourly employee, was represented by Local 168–6 of the Aluminum, Brick and Glass Workers International Union (Union), which entered into several agreements with PPG including, among others, the pension agreement and the company special agreement, also known as the "shutdown agreement." The pension agreement provided for four different retirement options: a normal retirement pension, an early retirement pension, a special early retirement pension and a special 30–year service pension. Under the special 30–year pension plan, each Claimant reached his individual retirement date when he accumulated 30 years of service credit. The plant shutdown did not change the pension provisions, and Attenberger did not receive a pension because of the shutdown. Attenberger did not contribute to the pension.

Because Attenberger had been laid off by PPG rather than permanently separated, he was permitted to exercise his rights under Section 13 of the shutdown agreement to apply for work that became available at other PPG plants represented by the Union. Although Attenberger was laid off, he continued to accrue pension service credit while on lay-off status. On January 9, 1995, Attenberger voluntarily relinquished his Section 13 rights by applying for a special 30–year pension, effective February 1, 1995. To qualify, an employee must have 30 years of continuous service and be actively employed, on lay-off or on official leave of absence. Pension Agreement, p. 1.1. Because he receives a supplementary benefit in addition to his base pension, Attenberger's monthly pension benefit of $1,487.10 is more lucrative than the pension he would have received had he waited to take a normal retirement pension at age 65.

The Board found that Jakubek was laid off by PPG on February 18, 1994 when the Greensburg plant closed and that he began receiving unemployment benefits. Jakubek continued to accrue service credit while on lay-off status; he too was a member of the Union with Section 13 rights to apply at PPG's other Union-represented plants. On September 8, 1994, Jakubek voluntarily relinquished his Section 13 rights and applied for a special 30–year pension, effective October 1, 1994. Jakubek's special 30–year pension monthly benefit of $1,520 is more lucrative than the pension he would have received had he waited to take a normal retirement pension at age 65.

The Board determined that pursuant to Section 13 of the shutdown agreement between the Union and PPG, both Attenberger and Jakubek possessed a right to apply for a job at PPG's Creighton plant. The Board noted that other workers at the Greensburg plant with less seniority than Attenberger or Jakubek applied at Creighton and were accepted for work there. Based on these facts, the Board determined that, although the Greensburg plant had closed, continued employment with PPG remained available to Claimants had they not elected to remain on lay-off status until they accrued enough service credit to qualify for the special 30–year retirement plan. Consequently, the Board concluded that Claimants were not permanently and involuntarily separated from their employment prior to their retirement dates as required by 34 Pa.Code § 65.103(a). Further, Attenberger could have retired and received an early retirement pension four years before the plant closing, thereby providing a second ground for finding him ineligible for benefits.[1]

II.

Claimants first contend that in accordance with Board regulations they are entitled to receive unemployment benefits without any offset for their pensions because they were permanently and involuntarily separated from employment prior to their retire-

---

1. Pursuant to Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704, this Court's scope of review of a Board decision is limited to determining whether the Board's necessary findings of fact are supported by substantial evidence, whether the Board committed an error of law or whether the Board's adjudication is in violation of the petitioner's constitutional rights. *Preservation Pennsylvania v. Unemployment Compensation Board of Review,* 673 A.2d 1044 (Pa.Cmwlth. 1996).

ment dates. The Court initially notes that the intent of the General Assembly in enacting the 1980 amendment to Section 404(d)(2) of the Law, providing for offset of pension payments, was to preserve unemployment funds for those who truly need them. *Grace v. Unemployment Compensation Board of Review*, 158 Pa.Cmwlth. 183, 631 A.2d 748 (1993).

Section 404(d)(2) provides in relevant part:

(2)(i) In addition to the deductions provided for in clause (1), for any week with respect to which an individual is receiving a pension, including a governmental or other pension, retirement or retired pay, annuity or any other similar periodic payment, under a plan maintained or contributed to by a base period or chargeable employer, the weekly benefit amount payable to such individual for such week shall be reduced, but not below zero, by the pro-rated weekly amount of the pension as determined under subclause (ii).

(ii) If the pension is entirely contributed to by the employer, then one hundred per centum (100%) of the pro-rated weekly amount of the pension shall be deducted. If the pension is contributed to by the individual, in any amount, then fifty per centum (50%) of the pro-rated weekly amount of the pension shall be deducted.

Claimants maintain, however, that because of the plant shutdown, their cases are controlled by 34 Pa.Code § 65.103, which provides:

(a) When an employe has accumulated certain moneys, rights or equities under a retirement pension or annuity plan but is permanently and involuntarily separated from his employment *prior to retirement date,* and payment is made to him from the moneys or in liquidation of his rights or equities, that payment may not constitute a retirement pension or annuity within the meaning of section 404(d)(4)(iii) of the law (43 P.S. § 804(d)(4)(iii)) [Section 404(d)(2) of the Law] nor may it be considered a deductible wage replacement under any other provision of the law.

(b) Subsection (a) applies whether the payment is made in a lump sum or in installments.

(c) *For purposes of this section, the phrase "prior to retirement date" means prior to the claimant's attainment of the age specified in the retirement plan or program at which the employe may be retired with full or reduced pension rights.* (Emphasis added.)

In support Claimants cite this Court's decisions in *Westinghouse Elec. Corp. v. Unemployment Compensation Board of Review*, 549 A.2d 623 (Pa.Cmwlth.1988) (*Westinghouse I*), and *Westinghouse Elec. Corp. v. Unemployment Compensation Board of Review*, 127 Pa.Cmwlth. 172, 561 A.2d 80 (1989) (*Westinghouse II*). In the *Westinghouse* cases this Court held, pursuant to 34 Pa. Code § 65.103(a), that pension payments to employees separated from employment due to a plant closing that occurred before the employees had reached retirement age under the employer's retirement plan were not deductible from unemployment benefits. These cases, nonetheless, are readily distinguishable from the cases sub judice.

In *Westinghouse I,* the claimants could not become eligible to apply for a pension under the employer's retirement plan until they reached 58 years of age. As a result of a plant closing, the claimants were given the option of receiving their pension benefits, which apparently consisted of their pension contributions either in a lump sum or in monthly payments. The Court reasoned that because of the plant closing, the claimants had been permanently separated from employment prior to retirement age for purposes of 34 Pa.Code § 65.103. The Court placed great emphasis on the fact that the claimants were not eligible to receive pension benefits because they had reached retirement age under the employer's retirement plan but rather were eligible to receive their pension contributions because the plant had closed. Furthermore, the Court indicated that 34 Pa.Code § 65.103 is meant to "protect the individual who has accrued a few hundred dollars in a contributory pension fund and who is permanently separated from his/her employment due to a plant closing."

*Westinghouse I,* 549 A.2d at 625–626.[2] In *Westinghouse II,* a case involving a third claimant in a similar situation, the Court confirmed its prior order in *Westinghouse I.*

In the present case Claimants did not contribute to their pensions. Although this Court does not interpret 34 Pa.Code § 65.103 as applying only to cases involving contributory pension plans, the Court in the *Westinghouse* cases found essential to a resolution of those cases the fact that the claimants had not reached retirement age under the employer's plan and were limited to receiving their pension contributions. Moreover, unlike the claimants in the *Westinghouse* cases, Claimants here remained on lay-off status after the plant closed and continued to accrue service credit. Because of this ongoing relationship, Claimants were not fully (and not necessarily permanently) "separated" from their employment. As a result, Claimants' reliance on the *Westinghouse* case is misplaced.

Nevertheless, there are other decisions of this Court that offer better guidance as to whether Claimants in the present case are entitled to the exemption contained in 34 Pa.Code § 65.103. In *Boyle v. Unemployment Compensation Board of Review,* 130 Pa.Cmwlth. 32, 566 A.2d 1259 (1989), this Court concluded that a claimant who accumulated sufficient years of service to retire and who retired due to an impending layoff, was not permanently and involuntarily separated from his employment "prior to his retirement date" within the meaning of 34 Pa.Code § 65.103. The Court followed *Boyle* in *Grace* and upheld the Board's determination that a claimant who was eligible to retire at the time of his separation from employment was not permanently separated from employment prior to his retirement date for purposes of 34 Pa.Code § 65.103. Similarly, in *Rathvon v. Unemployment Compensation Board of Review,* 663 A.2d 893 (Pa.Cmwlth.1995), the Court followed *Boyle* and *Grace* and expressly stated that even if the claimant neither intended to retire nor considered himself to be retired at the time of separation, the determinative factor for purposes of 34 Pa. Code § 65.103 was whether the claimant was eligible to retire under the employer's plan at the time of separation.

In *Salerno v. Unemployment Compensation Board of Review,* 674 A.2d 776 (Pa. Cmwlth.1996), this Court rejected a claimant's contention that for purposes of 34 Pa. Code § 65.103 his early retirement at age 55 constituted an involuntary separation from employment prior to the employer's "normal retirement age" of 60. The claimant contended that his pension would have been greater had he continued to work to age 65 as he intended. The Court held that because the claimant had reached the actual retirement date at which he could receive pension benefits without a penalty, his preference for delaying retirement in order to receive a larger pension was not part of the relevant inquiry under 34 Pa.Code § 65.103.

Applying the foregoing principles to the facts in the case sub judice, this Court concludes that the Board correctly determined that because Claimants accrued enough service credit to become eligible to receive their special 30–year pensions and in fact began receiving them, PPG was entitled to offset the weekly amount of the pensions against any unemployment benefits to which Claimants were entitled.[3] An agency's inter-

---

**2.** *See also Teledyne Columbia–Summerill Carnegie v. Unemployment Compensation Board of Review,* 160 Pa.Cmwlth. 17, 634 A.2d 665 (1993), where this Court applied the *Westinghouse* cases and held that the claimants, who had not reached the retirement age specified in their employer's retirement plan but who were eligible to receive pension benefits in the event of a plant closing, were entitled to the exemption contained in 34 Pa.Code § 65.103.

**3.** Claimant Attenberger alternatively contends that even assuming his pension is subject to offset against his unemployment benefits, the amount of the offset should be limited to the amount of the pension for which he would have been eligible had he retired as of the date of the plant closing. In *High v. Unemployment Compensation Board of Review,* 505 Pa. 379, 479 A.2d 967 (1984), the Supreme Court reiterated the rule that each week of unemployment is the subject of a separate claim, the validity of which is determined by a consideration of conditions existing within that week. In the present case, Attenberger began receiving pension benefits in the amount of $1,487.10 per month beginning February 1, 1995. As of that date, PPG is entitled to a pro-rated offset of 100 percent of the inter-

pretation of its own regulations is entitled to great deference and may not be disturbed unless it is plainly erroneous or inconsistent. *Teledyne Columbia–Summerill Carnegie v. Unemployment Compensation Board of Review,* 160 Pa.Cmwlth. 17, 634 A.2d 665 (1993).

Having determined that the exemption in 34 Pa.Code § 65.103 is inapplicable to Claimants, this Court need not address Claimants' additional contention that the Board erred in determining that they were not permanently separated from employment at the time of the plant closing because they had an opportunity to apply for a job at another PPG plant. Claimants did not receive their pension benefits when the plant closed, but they remained on lay-off status until they accrued enough service credit to become eligible for a pension under one of PPG's retirement plans. For the foregoing reasons, the orders of the Board are affirmed.

### ORDER

**AND NOW,** this 22nd day of August, 1996, the orders of the Unemployment Compensation Board of Review are hereby affirmed.

KELLEY, J., did not participate in the decision in this case.

pension benefits received by Attenberger on a     week-by-week basis.