**GENERAL MOTORS CORPORATION,**
Petitioner

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued Feb. 11, 2008.

Decided May 13, 2008.

P. Ronald Cooper, Pittsburgh and David M. Davis, Birmingham, MI, for petitioner.

Judith M. Gilroy, Asst. Counsel, for respondent.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

General Motors Corporation (Employer) petitions this Court to review an adjudication of the Unemployment Compensation Board of Review (Board) holding that the weekly compensation benefit owed to William J. Friese, Jr. (Claimant) should not be offset by the amount of pension benefit paid to Claimant by Employer. In doing so, the Board reversed a Referee's determination to permit an offset under Section 404(d)(2) of the Unemployment Compensation Law (Law).[1] Because we conclude that Claimant's unemployment compensation benefit should have been offset by his retirement income, we will reverse the Board and reinstate the Referee's decision.

The facts in this case are not in dispute. Claimant began working for Employer in January 1968. He retired on July 31, 2006, at the age of 59 and with 37.8 years of credited service. Claimant's retirement

---

1. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 804(d)(2).

was governed by a Supplemental Pension Agreement (Agreement) between Employer and the United Auto Workers Union dated September 18, 2003. Claimant elected an early retirement option for employees who had accrued 30 or more years of credited service but had not yet reached age 62. Under the Agreement, employees in that class who retired between October 1, 2005, and September 1, 2006, qualified for an early retirement pension of $2,950 per month until age 62. Board Opinion at 2; Finding of Fact No. 8 (F.F. ——).[2] This early retirement pension has two components: (1) a base pension that is calculated on the basis of the employee's years of service, his basic benefit rate and his age; and (2) a monthly early retirement supplemental payment payable in an amount necessary to bring the monthly pension amount up to $2,950.

Claimant's monthly pension of $2,950 payable on August 1, 2006, was calculated as follows. Beginning with Claimant's base pension, he was entitled to a basic benefit rate of $50.60 because he retired on July 31, 2006. That rate was multiplied by Claimant's years of service, or 37.8, and then by an age factor of 80.8 percent because Claimant was 59 years old. The result was a base pension of $1,545.45 per month. Claimant also began receiving an early retirement supplement of $1,404.55, because the Agreement between Employer and his union guaranteed him a total

monthly pension of $2,950 until age 62, if he retired before age 62.[3]

Claimant applied for unemployment compensation benefits effective August 13, 2006. The UC Service Center determined that Claimant qualified for a weekly benefit of $497 based on his wages during the base-year period of April 1, 2005, through March 31, 2006.[4] The UC Service Center also determined that Claimant's earnings with Employer during that base-year period increased the amount of his monthly pension to be paid by Employer. Because of this pension increase, the UC Service Center found that the offset provision at Section 404(d)(2) of the Law, 43 P.S. § 804(d)(2), had to be applied. Accordingly, the amount of Claimant's pro-rated weekly pension offset his weekly unemployment benefit of $497 by more than 100 percent, reducing Claimant's unemployment compensation benefit to $0. Claimant appealed, and a hearing was held before a Referee. The Referee affirmed the UC Service Center's determination that Claimant's unemployment compensation should be offset by his retirement pension. Claimant appealed.

The Board reversed. It concluded that Claimant's unemployment compensation benefit was not subject to the offset because Claimant's work during the base-year period of April 1, 2005, through March 31, 2006, did not affect his early retirement monthly pension of $2,950. The Board acknowledged the general rule

2. The following table summarizes the pension benefit for employees under age 62 with more than 30 years of service:
   $2,805 if the employee retires between October 1, 2003, and September 1, 2004;
   $2,875 if the employee retires between October 1, 2004, and September 1, 2005;
   $2,950 if the employee retires between October 1, 2005, and September 1, 2006;
   $3,020 if the employee retires after October 1, 2006.
   Board Opinion at 2; F.F. 8.

3. Claimant's monthly benefit was actually $2,852.09 because he elected a survivor's benefit. For purposes of our analysis we will disregard that deduction. Additionally, we note that the total monthly benefit for all retirees under 62 years of age with over 30 years of service was raised to $3,020 effective October 1, 2006.

4. Claimant's eligibility for unemployment compensation benefits is not at issue.

that a claimant's unemployment compensation benefits must be reduced by the amount of a pension the claimant receives from his employer. However, there is an exception to this general rule at Section 404(d)(2)(iii) of the Law, 43 P.S. § 804(d)(2)(iii). Under this exception, there is no offset where a claimant's work during the base-year period does not increase the claimant's pension. In this case, because of Employer's supplement, Claimant receives the same monthly amount of $2,950 from Employer until age 62, regardless of his work during the base-year period. Accordingly, the Board held that Claimant's unemployment compensation benefit should not be offset, or reduced, by his monthly pension. Employer now petitions for this Court's review.

■ Before this Court,[5] Employer argues that the Board misunderstood the nature of Employer's retirement plan when it applied the exception in Section 404(d)(2)(iii) of the Law, 43 P.S. § 804(d)(2)(iii). Employer also argues that the Board's decision undermines the purpose of the statutory offset, which is to preserve the financial integrity of the fund by not paying benefits to persons who have adequate wage replacement income following their loss of employment. We agree with Employer's arguments.

We begin with Section 404 of the Law, which governs the rate and amount of compensation payable to an unemployed individual. This section provides, generally, that

each eligible employe who is unemployed with respect to any week ending

subsequent to July 1, 1980 shall be paid, with respect to such week, compensation in an amount equal to his weekly benefit rate.

Section 404(d)(1) of the Law, 43 P.S. § 804(d)(1). A claimant's unemployment compensation benefit is calculated based upon his wages earned during his "base year," which is defined as

the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year.

Section 4(a) of the Law, 43 P.S. § 753(a).[6] In this case, it is undisputed that Claimant's base year was April 1, 2005, through March 31, 2006.

■ The calculation of the amount of a claimant's unemployment compensation benefits requires a consideration of certain prescribed offsets. The offset relevant here is found in Section 404(d)(2) of the Law, which states:

[F]or any week with respect to which an individual is receiving a pension, including a governmental or other pension, retirement or retired pay, annuity or any other similar periodic payment, under a plan maintained or contributed to by a base period or chargeable employer, *the weekly benefit amount payable to such individual for such week shall be reduced, but not below zero, by the prorated weekly amount of the pension* as determined under subclause (ii).

(ii) If the pension is entirely contributed to by the employer, then one hundred per centum (100%) of the

---

5. Our review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law was committed or whether any constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Grace v. Unemployment Compensation Board*

*of Review*, 158 Pa.Cmwlth. 183, 631 A.2d 748, 749 (1993).

6. The "benefit year" is the fifty-two consecutive week period beginning with the day as of which a claimant files a valid application for benefits. 43 P.S. § 753(b).

pro-rated weekly amount of the pension shall be deducted.

43 P.S. § 804(d)(2) (emphasis added). Here, there was no question that Claimant's monthly pension, even before the early retirement supplement, was entirely contributed by Employer and exceeded the amount of Claimant's unemployment benefit. The pension offset in Section 404(d)(2) advances two legitimate government objectives, as explained by this Court:

> (1) the promotion of the fiscal integrity of the unemployment compensation fund; and (2)[the] elimination of the duplicative "windfall" benefits to those who, primarily because of their retirement eligibility, are receiving adequate wage replacement income and thus experiencing greater economic security than those less fortunate.

*McFadden v. Unemployment Compensation Board of Review,* 806 A.2d 955, 961 (Pa.Cmwlth.2002) (quoting *Latella v. Unemployment Compensation Board of Review,* 74 Pa.Cmwlth. 14, 459 A.2d 464, 468–469 (1983)).[7]

The General Assembly has provided a narrow exception to the general rule that unemployment compensation will be reduced by a claimant's pension. That exception is found at Section 404(d)(2)(iii) of the Law, and it provides:

> No deduction shall be made under this clause by reason of the receipt of a pension if the services performed by the individual during the base period or remuneration received for such services for such employer did not affect the individual's eligibility for, or increase the amount of, such pension, retirement or retired pay, annuity or similar payment.

43 P.S. § 804(d)(2)(iii). It is the application of this narrow exception that frames the issue in this case.

The question of the deductibility of Claimant's pension benefit hinges on whether Claimant's employment during the base year resulted in an increase in the amount of his pension. We agree with Employer that it did. Claimant's lifetime basic benefit rate is calculated by using a multiplier for years of credited service. Each month that Claimant worked during his base year resulted in an increase of 0.1 in the multiplier and a corresponding increase in his base pension benefit. Stated in terms of real numbers, if Claimant had retired at the beginning of his base year on April 1, 2005, his base pension benefit would have been $1,492.30. If he had retired at the end of the base year, March 31, 2006, his base pension benefit would have increased to $1,533.18. By actually waiting until July 31, 2006, Claimant increased his base pension benefit to $1,545.45 per month. What is clear from the foregoing calculations is that Claimant's decision to work during the base-year period increased the amount of his base pension.

The problem in this case is that the increase in Claimant's base pension is not immediately apparent in actual dollars because of the equalizing effect of the early retirement supplement. Regardless of when Claimant retired during base year, his *total* monthly pension would have been $2,950 because of Employer's early retirement supplement, which is paid to age 62.

---

**7.** This Court has also analyzed the various amendments to the pension offset provision found in former Section 404(d)(iii), now Section 404(d)(2), and noted that "the legislature has followed a steady course beginning with a very limited class of pensions which were deductible and ending with the [then most recent] 1980 amendment which, in our opinion, is all inclusive." *Tenaglia v. Unemployment Compensation Board of Review,* 73 Pa. Cmwlth. 453, 458 A.2d 331, 333 (1983).

Nevertheless, the increase in Claimant's base pension is real, and it will become apparent when he reaches the age of 62 and one month. At that point, the early retirement supplement will cease, and Claimant's basic benefit rate will be recalculated based on his years of credited service and without any age reduction. The total monthly benefit Claimant begins to receive at that time will be higher because of the additional year of credited service he accrued by working during the base year.

Claimant does not dispute that his base pension has increased because he worked during his base year. Rather, he contends that this Court cannot look at the amount of the pension he will receive at age 62, after the early retirement supplement ends. Claimant maintains that his eligibility for benefits must be based upon the conditions that existed in the week for which benefits were claimed, *High v. Unemployment Compensation Board of Review*, 505 Pa. 379, 383, 479 A.2d 967, 969 (1984), or, in this case, the weeks beginning on August 19, 2006.

While we do not disagree with Claimant's statement of the law, we find that the principle in *High* is not dispositive of the issue before us. Claimant's eligibility for unemployment compensation benefits is not at issue. Nor is the amount of the unemployment compensation benefit to which he is entitled. The only issue before the Court is whether Claimant's pension is one that falls within the narrow exception in Section 404(d)(2)(iii) for pensions that cannot be offset against unemployment compensation. We need look no further than the statutory language to answer that question.

Section 404(d)(2)(iii) requires us to determine whether services performed by an individual during the base period affected "the amount of [his] pension, retirement or retired pay, annuity or similar payment." 43 P.S. § 804(d)(2)(iii). There is no temporal limitation in the statute as to when the effect on one's pension must be realized. As it is written, the effect may be immediate, or it may occur at some future time, such as in this case when Claimant reaches age 62. Claimant's position essentially requires us to add a temporal limitation to the exception, *i.e.,* that an individual's work during the base period increased the amount of such pension "due and payable immediately." We decline to add words of limitation to Section 404(d)(2)(iii) where there are none.

■ Our interpretation of Section 404(d)(2)(iii) also comports with the legislative purpose of the pension offset scheme. The pension offset is intended to preserve the financial integrity of the fund and to prevent a windfall to retirees who are already receiving adequate wage replacement income through a pension. *McFadden*, 806 A.2d at 961. It follows that this Court should narrowly construe any exception to the general rule that a pension is deductible from an unemployment compensation benefit. Interpreting Section 404(d)(2)(iii) as Claimant suggests would be inconsistent with the objective of the offset because it would result in a windfall to Claimant. It would also discourage employers from offering their retiring employees a supplemental pension benefit, which in this and other cases is intended to provide additional financial security until the retiree is eligible for Social Security benefits.[8]

8. Claimant relies heavily on *Czuba v. Unemployment Compensation Board of Review*, 55 Pa.Cmwlth. 231, 422 A.2d 1235 (1980). Although that case and the case *sub judice* share similar facts, the legal issue in *Czuba* was quite different. In that case, claimants' pension benefit was comprised of a regular base pension and a supplemental payment of $300

Claimant's interpretation of Section 404(d)(2)(iii) is also apparently at odds with the purpose of a similar provision in Section 3304 of the Federal Unemployment Tax Act (FUTA), 26 U.S.C. § 3304.[9] As originally enacted, Section 3304(a)(15), like its counterpart at Section 404(d)(2) of the Law, set forth the general rule that an individual's unemployment compensation benefit should be reduced by the amount of a pension the individual is receiving. In 1980, Congress enacted the Multi-employer Pension Plan Amendments Act of 1980,[10] which added two conditions that must be satisfied before the offset of pension payments must occur:

(A) the requirements of this paragraph shall apply to any pension, retirement or retired pay, annuity, or other similar periodic payment *only if*—

(i) such pension, retirement or retired pay, annuity, or similar payment is under a plan maintained (or contributed to) by a base period employer or chargeable employer (as determined under applicable law), and

(ii) in the case of such a payment not made under the Social Security Act or the Railroad Retirement Act of 1974 (or the corresponding provisions of prior law), *services performed for such employer by the individual after the beginning of the base period* (or remuneration for such services) affect eligibility for, or *increase the amount of, such pension,* retirement or retired pay, annuity, or similar payment.

26 U.S.C. § 3304(a)(15)(A) (emphasis added). These conditions are the federal analog to Pennsylvania's "exception" in Section 404(d)(2)(iii).

As at least one federal court has explained, quite convincingly in our view, the purpose of the condition in subsection (A)(ii) was to eliminate the possibility of an employer using another employer's pension as an offset to a claimant's unemployment compensation benefit. *Rivera v. Patino,* 543 F.Supp. 1160, 1171 (N.D.Cal. 1982). The District Court explained further:

The punitive aspect of the 1976 statute which Congress sought to alleviate by enacting (A)(i) and (A)(ii) was the fact that, under the 1976 law, unemployment insurance benefits were reduced, dollar for dollar, by any retirement payment, even *when the recipient of the payment, although technically "retired" from a job with Company A, had in fact been forced to seek reemployment with Com-*

---

per month until claimants reached age 62. The sole issue before the Court was whether the supplemental payment was part of claimants' overall "retirement pension" for purposes of calculating the amount of the offset. We affirmed the Board's decision that it was. There was no issue in *Czuba* regarding whether the offset was applicable, and it bears noting that *Czuba* was decided 8 years before the General Assembly added the exception at Section 404(d)(2)(iii) of the Law.

9. Federal jurisprudence is especially persuasive in this area. Unemployment insurance has been described as a system of "cooperative federalism" in which each state receives federal funds to reimburse its costs of administering the program. *Montgomery County Head Start v. Unemployment Compensation Board of Review,* 938 A.2d 1137, 1139 (Pa. Cmwlth.2007). In order for a state to receive reimbursement for its administrative costs it must meet minimum compliance standards set forth in the FUTA, 26 U.S.C. §§ 3301–3320. *Id.* FUTA requires, *inter alia,* that a state's unemployment law must contain a provision similar to the provision at 26 U.S.C. § 3304(a)(15) for pension offsets.

10. Act of September 26, 1980, P.L. 96–364, Title IV, § 414(a).

*pany B, and had then been laid off.* Sections (A)(i) and (A)(ii) were designed to ensure that such individuals, who had never intended to leave the work force and were still actively seeking employment, would not be penalized for the receipt of retirement payments from Company A.

*Id.* at 1171 (emphasis added). Stated another way, Section 3304(a)(15)(A) ensures that the offset applies only where the claimant is receiving duplicative payments from the same employer and that the base period employer is subject to duplicative financial liability for unemployment benefits and pension contributions. *Id.* at 1172. Applying these principles here, it is clear that Claimant is not entitled to invoke the exception in Section 404(d)(2)(iii) because to do so would result in Claimant receiving a "windfall," which is contrary to the purpose of the offset. *McFadden,* 806 A.2d at 961. This is not a multiple employer situation, which is the occasion that we believe prompted the General Assembly to enact Section 404(d)(2)(iii).[11]

For all of the foregoing reasons, we reverse the order of the Board and reinstate the decision of the Referee.

## ORDER

AND NOW, this 13th day of May, 2008, the order of the Unemployment Compensation Board of Review in the above-captioned matter, dated April 11, 2007, is hereby REVERSED and the Referee's Decision/Order dated December 26, 2006, is REINSTATED.

DISSENTING OPINION BY Judge McGINLEY.

I respectfully dissent to the majority's conclusion that "Claimant's unemployment compensation benefit should have been offset by his retirement income" because Claimant's pension does not fall "within the narrow exception in Section 404(d)(2)(iii) [43 P.S. § 804(d)(2)(iii)] for pensions that cannot be offset against unemployment compensation."[1]

The majority correctly notes that under the exception "[t]he question of the deductibility of Claimant's pension benefit hinges on whether Claimant's employment during the base year resulted in an increase in the amount of his pension." Majority Opinion at 260. The majority then found that "Claimant's decision to work during the base year period increased the amount of his base pension" in contravention to the narrow exception in Section 404(d)(2)(iii). Majority Opinion at 260.

Nevertheless, the majority improperly considered Claimant's pension status after he reaches 62 and misconstrued the immediacy of Claimant's base pension increase. The majority explained that once Claimant reaches age 62 his early retirement supplemental payment will cease and Claimant's total monthly benefit "will be higher because of the additional year of credited service he accrued by working during the base year." Majority Opinion at 261. The majority acknowledged that the "increase in Claimant's base pension is not *immedi-*

---

11. It is possible, we suppose, that an employee could return to work for the employer that is paying him a pension. In that case, if the employee was laid off from the second job, then his work during the base-year period would not affect his pension. Accordingly, he could receive unemployment compensation without a pension offset.

1. Under the exception in Section 404(d)(2)(iii), no offset is permitted where a claimant's work during the base year period does not increase the claimant's pension benefit.

*ately* apparent ... because of the equalizing effect of the early retirement supplement." Majority Opinion at 261 (emphasis added). This Court added that, "[n]evertheless, the increase in Claimant's base pension is real, and it will become apparent when he reaches the age of 62 and one month."

I disagree with the majority's conclusion that *High v. Unemployment Compensation Board of Review,* 505 Pa. 379, 383, 479 A.2d 967, 969 (1984) is not dispositive on the issue. In *High,* the Supreme Court held that "each week of unemployment is the subject of a separate claim, the validity of which is determined by a consideration of conditions existing within that week" for which benefits were claimed. *Attenberger v. Unemployment Compensation Bd. of Review,* 682 A.2d 68 n. 3 (Pa.Cmwlth.1996). Under *High,* Claimants unemployment benefits must be determined on a week-by-week basis which would preclude this Court from looking at any increase in Claimants base pension that might become apparent after he reaches the age of 62. Instead, the conditions that existed here were such that Claimant immediately began receiving a total monthly pension in the amount of $2,950 beginning August 1, 2006, which necessitates a determination of unemployment compensation benefit on that basis.

Furthermore, I disagree with the majority that Claimant's employment during the base year resulted in an increase in the amount of his pension. Majority opinion at 260–61. The majority emphasized an increase to the amount of Claimant's base pension as demonstrated by a series of calculations. Majority Opinion at 260–61. Section 404(d)(2)(iii), however, requires this Court to determine whether services performed by Claimant during the base period affected or increased "the amount

of [his] pension, retirement or retired pay, annuity or similar payment."

The majority opinion appropriately recognized that "regardless of when Claimant retired during the base year, his *total* monthly pension would have [amounted] to $2,950" since it was a guaranteed amount governed by the Supplemental Pension Agreement between Employer and the United Auto Workers Union. Majority Opinion at 260–61. The amount of Claimant's monthly pension benefit did not increase during the base year period because it was a pre-determined amount unaffected by services performed by the Claimant throughout the base period. As such, Claimants total monthly pension falls within the exception of pensions that cannot be offset against unemployment compensation.

Accordingly, the Board properly applied the exception in determining that "Claimant's unemployment compensation benefit was not subject to the offset because Claimant's work during the base-year period ... did not affect [or increase] the amount he received *immediately* upon retirement, *i.e.,* $2,950." Majority Opinion at 258–59 (emphasis added). Therefore, Claimant is entitled to unreduced unemployment compensation benefits because his pension cannot be offset against the same pursuant to the exception in Section 404(d)(2)(iii).

Accordingly, I would affirm the Board's decision.