## PORT AUTHORITY OF ALLEGHENY COUNTY, Petitioner

v.

## UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 30, 2011.

Decided July 27, 2012.

---

Rachel A. O'Driscoll, Pittsburgh, for petitioner.

Janet M. Tarczy, Assistant Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY President Judge LEADBETTER.[1]

Employer Port Authority of Allegheny County petitions for review of three June 20, 2011, orders of the Unemployment Compensation Board of Review (Board).[2] The Board reversed a referee's three decisions which modified regular unemployment benefits, denied emergency unemployment benefits and supplemental disability benefits and found overpayments subject to recoupment. The basis for all three of the referee's decisions was that Claimant, James G. Earhart, Jr., was receiving disability payments from Employer's Re-

---

1. This case was assigned to the opinion writer on or before January 6, 2012, when she completed her term as President Judge.

2. Without seeking to consolidate the Board's three decisions for appeal, Petitioner filed one appeal with this Court. While it is true that filing one appeal from multiple orders is strongly disapproved, *Croft v. Unemployment Compensation Board of Review*, 662 A.2d 24 (Pa.Cmwlth.1995), we may refrain from quashing the appeal in the interest of judicial economy. *Mikkilineni v. Amwest Sur. Ins. Co.*, 919 A.2d 306 (Pa.Cmwlth.2007).

tirement and Disability Allowance Plan and did not report them when he applied for benefits. Finding that the plan payments were deductible from Unemployment Compensation (UC) benefits, the referee reduced those benefits and, therefore, found that Claimant had failed to exhaust regular UC benefits before applying for supplemental and emergency benefits and also that he had received an overpayment subject to recoupment. Employer raises one issue on appeal: whether the Board erred in determining that payments under Employer's disability plan were not deductible under Section 404(d)(2) of the Unemployment Compensation Law,[3] 43 P.S. § 804(d)(2). For the reasons that follow, we affirm.

In July 1993, Employer hired Claimant as a bus operator.[4] On April 21, 2008, he had a syncope episode that rendered him medically unable to drive a bus. Last employed as a bus operator on March 13, 2009, Claimant requested a disability allowance through Employer's plan on December 8, 2009. Thereafter, Employer's doctor reported that Claimant was disabled effective April 21, 2008, and recommended that he be reexamined in four to five years. In January 2010, Employer approved Claimant's application for disability benefits, effective November 1, 2009.

Employer's plan provides for a monthly payment based on an employee's average annual compensation. It requires an employee who is receiving disability benefits to report to Employer any earnings from "outside of Employer" employment or self-employment. In addition, it provides that an "employee's disability allowance may be reduced by earnings above that of a regular active employee."[5] Board's June 20, 2011 Decision No. B–519041, Finding of Fact No. 11. If Employer at any time finds that an employee receiving a disability allowance is no longer disabled, it will discontinue payment of benefits. If an employee is able to return to work with Employer, he or she will have accumulated seniority, but will not be credited with accumulated continuous service. Further, if an employee reaches the age of seventy while receiving a disability allowance, he or she shall be deemed to have retired on such date.

 Employer first argues that Claimant's disability allowance was deductible under Section 404(d)(2) of the Law as a disability retirement pension. Section 404(d)(2)(i)-(iii) of the Law provides as follows:

> (2)(i) In addition to the deductions provided for in clause (1), for any week with respect to which an individual is receiving a *pension, including a governmental or other pension, retirement or retired pay, annuity or any other similar periodic payment, under a plan maintained or contributed to by a base period or chargeable employer,* the weekly benefit amount payable to such individual for such week shall be reduced, but not below zero, by the prorated weekly amount of the pension as determined under subclause (ii).

---

**3.** Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 804(d)(2).

**4.** Claimant/Intervenor was precluded from filing a brief in this matter for failure to do so within fourteen days of this Court's November 7, 2011 order.

**5.** Under Employer's plan, an "inactive employee" is any "participating employee," who is not an "active employee," including any "participating employee" who is receiving a disability allowance. Board's June 20, 2011 Decision No. B–519041, Finding of Fact No. 9.

(ii) If the pension is entirely contributed to by the employer, then one hundred per centum (100%) of the pro-rated weekly amount of the pension shall be deducted. Except as set forth in clause (4), if the pension is contributed to by the individual, in any amount, then fifty per centum (50%) of the pro-rated weekly amount of the pension shall be deducted.

(iii) No deduction shall be made under this clause by reason of the receipt of a pension if the services performed by the individual during the base period or remuneration received for such services for such employer did not affect the individual's eligibility for, or increase the amount of, such pension, retirement or retired pay, annuity or similar payment.

43 P.S. § 804(d)(2)(i)-(iii) (emphasis added). In addition, 34 Pa.Code § 65.102(b) provides that "[d]eductible pensions include a governmental or other pension, retirement or retired pay, annuity or any other similar periodic payment which is made under a plan maintained or contributed to by the claimant's base period or chargeable employer and is based on the claimant's previous work." The scope of the term "similar periodic payment," however, has been interpreted and clarified by 34 Pa.Code § 65.102(k), which provides that "[t]he Department will not deduct periodic payments which are made under severance agreements, profit sharing arrangements or disability plans administered by a union, employer, workers' compensation carrier, insurance company or the Veterans Administration, unless the payments are based on retirement and fulfill all other prerequisites specified in this chapter." In other words, for a periodic payment to be "similar" to the previously described pensions, etc., it must be, like them, based on retirement.

Employer maintains that this Court has consistently held that disability retirement pensions with plan provisions similar to the one at issue are deductible. *See Tenaglia v. Unemployment Comp. Bd. of Review,* 73 Pa.Cmwlth. 453, 458 A.2d 331 (1983) (permanent service-connected disability pension deductible as a periodic payment based upon claimant's previous work); *Matthews v. Unemployment Comp. Bd. of Review,* 73 Pa.Cmwlth. 267, 458 A.2d 624 (1983) (United States Postal Service disability pension deductible); and *G. C. Murphy Co. v. Unemployment Comp. Bd. of Review,* 13 Pa.Cmwlth. 537, 319 A.2d 438 (1974) (disability retirement pension wholly funded by employer deductible as a retirement pension). However, the regulation allowing deduction only for retirement based payments, which the Board found to be controlling, was added to the regulation by amendment in 1998, well after these cases were decided. *See* 28 Pa. B. 21 (1998).

 Applying the plain language of the regulation to Claimant's situation, the Board reasoned as follows:

Here, the claimant is receiving a disability allowance pursuant to a disability plan administered by the employer and which is based on the claimant's previous work. However, there is nothing in the Disability Allowance Plan that required the claimant to retire from his employment in order to receive the benefit. In fact, provisions in the [plan] suggest that employees receiving the disability allowance remain an employee, albeit an inactive one. For example, they must report any earnings 'outside the Employer' to the employer and their benefit may be reduced. Further, the [plan] allows for the employee to return to work if the disability ends, and the employee retains his seniority. Importantly, an employee receiving a disability

allowance is not considered retired until the employee attains 70 years of age. This provision would be unnecessary if the employee was already retired. The claimant credibly testified that he did not retire from employment, but was on temporary disability. Because there is no evidence that the benefits the claimant receives pursuant to the employer's disability plan are 'based on retirement,' they are not deductible.

Board's June 20, 2011 Decision No. B–519041 at 4. It is well established that "[a] duly promulgated regulation has the force and effect of law." *Teledyne Columbia–Summerill Carnegie v. Unemployment Comp. Bd. of Review*, 160 Pa.Cmwlth. 17, 23, 634 A.2d 665, 668 (1993). Moreover, we will defer to an agency's interpretation of its own regulation unless it is plainly erroneous. *Id.* at 25, 634 A.2d at 669. Accordingly, we will not disturb the Board's determination in this regard.

■ Employer next argues that Claimant's disability payments should be deductible in accordance with Section 3304(a)(15) of the Federal Unemployment Tax Act (FUTA), 26 U.S.C. § 3304(a)(15), and the United States Department of Labor's Unemployment Insurance Program Letter (UIPL) 22–87.[6] Employer contends that UIPL 22–87 provides that "disability pensions" and "disability retirement pensions" are subject to pension offset requirements. A careful reading of UIPL 22–87, however, indicates that Employer has taken those two phrases out of the context in which they were listed.

Noting that "[n]o exhaustive list of all of the kinds of payments that are deductible is available," [7] UIPL 22–87 provides a list of nine specific types of payments provided for under certain programs or plans that are subject to pension offset requirements. The two at issue are as follows: "1. Primary social security old age and *disability retirement benefits*, including those based on self-employment" and "3. Federal Civil Service pensions, including *disability pensions*." *Id.* at ¶ 6(b)(1) and (3) (emphasis added). Neither of those deductions specifically addresses the disability payments at issue in the instant case. In fact, the phrases that Employer has isolated from the list, "disability retirement benefits" and "disability pensions," refer back to social security and federal civil service pensions. Accordingly, we reject Employer's contention that the Board's determination is contrary to the applicable federal guideline.[8]

Third, Employer argues that deduction of the disability payments at issue would be consistent with the intent of the Law, specifically the two legitimate government objectives of Section 404(d)(2)'s pension offset: promotion of the fiscal integrity of the unemployment compensation fund and the elimination of duplicative windfall benefits to retirees who are already receiving adequate wage replacement income through a pension. *Gen. Motors Corp. v.*

---

6. The Commonwealth's counterpart to Section 3304(a)(15) of FUTA is Section 404(d)(2) of the Law.

7. UIPL 22–87 at ¶ 6(b).

8. In order for our Commonwealth to receive reimbursement for administrative costs, it must meet FUTA's minimum compliance standards. *Gen. Motors Corp. v. Unemployment Comp. Bd. of Review*, 948 A.2d 256, 262 n. 9 (Pa.Cmwlth.2008). It is also true, however, that "[a] federal [UIPL], issued to help states interpret FUTA, is simply 'not binding authority upon this Court or the agencies of this Commonwealth since it is merely an administrative interpretation of federal law.'–" *Montgomery County Head Start v. Unemployment Comp. Bd. of Review*, 938 A.2d 1137, 1141 (Pa.Cmwlth.2007) [quoting *Glassmire v. Unemployment Comp. Bd. of Review*, 856 A.2d 269, 275 (Pa.Cmwlth.2004)].

*Unemployment Comp. Bd. of Review*, 948 A.2d 256, 261 (Pa.Cmwlth.2008). We disagree.

Based on the evidence, the Board concluded that Claimant did not retire. In addition, it noted that the plan required Claimant to report any earnings "outside the Employer" so that his benefits could be reduced accordingly, thereby preventing so-called "double-dipping." We therefore reject Employer's contention that the non-deductibility of the disability payments at issue in accordance with 34 Pa. Code § 65.102(k) would abrogate the intent of the Law.

For the above reasons, we affirm the Board's three orders.

### *ORDER*

AND NOW, this 27th day of July, 2012, the three orders of the Unemployment Compensation Board of Review in the above-captioned matter are hereby AFFIRMED.